MICHAEL TYNAN, ADMINISTRATOR OF THE ESTATE OF WILLIAM D. BELL, DECEASED *v.* THOMAS WALKER.

STATUTES OF LIMITATIONS IN GENERAL—CONSTRUCTION OF.—It is a universally accepted rule that Statutes of Limitations are to be strictly construed. General words in the statute must receive a general construction, and if there be no express exception, the Courts can make none.

CONSTRUCTION OF STATUTES.—It is a universal rule of construction that Courts must

find the intent of the Legislature in the statute itself. Unless some ground can be found in the statute for restraining or enlarging the meaning of its general words, they must receive a general construction, and the Courts cannot arbitrarily subtract from or add thereto.

STATUTE OF LIMITATIONS—CONSTRUCTION OF.—The clause in the Statute of Limitations which provides that civil actions shall be commenced within certain periods therein prescribed "after the cause of action shall have accrued," does not imply, in addition, the existence of a person legally competent to enforce it by suit. The statute must run in all cases not therein expressly excepted from its operation.

IDEM.—There is no provision made in the statute excepting from its operation a case where the party who would have been entitled to sue dies before the cause of action has accrued.

IDEM.—In such case, the persons interested in his estate—his creditors, heirs, and devisees—have the full time allowed by the statute (six months) to obtain a grant of administration and commence an action.

IDEM.—B. being seized of certain lands, shortly before his death, which ·occurred April 5th, 1854, placed W. in possession under him. In October, 1854, W. made entry and claim of said lands as his own, and thereafter, under said claim, held the undisturbed possession of the same for more than twelve years. On the 5th day of October, 1866, T. was appointed administrator of the estate of B., and on the 8th day of November following brought ejectment against W. to recover the possession of said lands, to which action W. pleaded the Statute of Limitations in bar: *Held,* that the plea was well taken and the action was barred.

PLEADING—SUFFICIENCY OF DENIALS—PRACTICE.—Where certain material averments of the plaintiff's complaint were so defectively denied that, upon motion, such denials might properly have been stricken out as sham and irrelevant, yet without such objection made thereto the plaintiff introduced proof at the trial in their support: *Held,* that by introducing said proof the plaintiff waived all objections to the sufficiency of said denials, and the Court properly refused an instruction to the jury, asked by the plaintiff, to the effect that the facts so averred were admitted to be true for all the purposes of said trial.

IDEM.—In such case, if the plaintiff had regarded said denials as insufficient, and desired to take advantage of the fact, he should have moved to strike them out on the ground that they were sham and irrelevant. Under the provisions of section fifty of the Practice Act, denials contained in an answer, which do not explicitly traverse the material allegations of the complaint, may be stricken out, on motion, as sham and irrelevant.

APPEAL from the District Court, Eleventh Judicial District, Amador County.

This was an action of ejectment, brought by plaintiff as the administrator of the estate of William D. Bell, deceased, to recover the possession of a tract of land in Amador County, and was commenced November 8th, 1866. In the Court below judgment passed for the defendant, and the plaintiff moved

for a new trial, upon the ground, among others, that the Court erred in refusing to give to the jury certain instructions mentioned in the opinion of this Court. The motion was denied, and the plaintiff appealed from the judgment and from the order denying a new trial.

The other facts are stated in the opinion of the Court.

*J. W. Armstrong,* for Appellant.

*Gordon & Hunt,* for Respondent.

[The authorities applicable to the points decided which were cited in the briefs of counsel, respectively, are cited and discussed in the opinion of the Court.—Rep.]

By the Court, Sanderson, J.:

The principal question involved in this case, and the one upon which the final decision must mainly turn, relates to the defense of the Statute of Limitations. The case shows that Bell, the plaintiff's intestate, died on the 3d of April, 1854. That the plaintiff was appointed administrator on the 5th of October, 1866, more than twelve years subsequent to the death of Bell. That prior and up to September, 1853, Bell was in the actual occupation and possession of the premises, at which time he made a journey to the Atlantic States, leaving the premises in the care and charge of one Davis. That Bell returned in March, 1854, sick with the small pox. That he went to the premises, and, not finding Davis there, "went up the creek to find him," but without success. That on his return he stopped at the defendant's house to rest, but became worse, was unable to leave, and remained there until his death. That the defendant, on account of the nature of Bell's disease, was unwilling to live in the house with him, and Bell directed Davis to move out of his (Bell's) house and let the defendant occupy it until he (Bell) should recover. That Davis gave the key to the defendant, who thereupon,

and before the death of Bell, took possession of Bell's house. That in October, 1854, the defendant took up the premises under the statute in relation to the mode of maintaining possessory actions on public lands, (Stats. 1852, p. 158,) and has been claiming to hold them in his own right ever since, adversely to the whole world.

Upon the foregoing testimony, the Court below instructed the jury, in effect, that the plaintiff's cause of action was barred by the Statute of Limitations, whether they found that the defendant had entered in the lifetime of Bell and as his tenant, (as claimed by the plaintiff,) or entered in October, after the death of Bell, in his own right, and claiming adversely to all the world, (as claimed by the defendant,) and that the question as to the bar was wholly unaffected by the fact that the appointment of an administrator had been delayed until October, 1866.

It is claimed on the part of the plaintiff that in thus instructing the jury the Court below erred. That inasmuch as, either upon the theory of the plaintiff or of the defendant in respect to the entry of the latter, the cause of action did not accrue until after the death of Bell, the statute did not commence to run until the appointment of the plaintiff as administrator.

In support of this proposition, counsel for the plaintiff appeals to the rule of construction adopted by the English Courts in relation to the statute of 21 James I, Ch. 16, to the effect that the term "cause of action" implies not only a right of action, but also the existence of some person who is competent to sue upon it. The rule was deduced from the maxim of the civil law, "*contra non valentem agere non currit præscriptio*," and it was accordingly held that there must be not only a cause of action, but a person to sue. So, where an action was brought by an administrator upon certain bills of exchange made payable to his testator, but accepted after his death, and the acceptance was more than six years before the commencement of the action, but within six years after administration was granted, it was held that the statute did

not begin to run until the grant of administration. (*Murray* v. *The East India Company*, 5 Barn. & Ald. 204; *Cary* v. *Stephenson*, Salk. 421.) This rule has been followed in some of the United States. (*Sturges* v. *Sherwood*, 15 Conn. 149; *Hansford* v. *Elliott*, 9 Leigh, 79; *Ruff's Administrators* v. *Bull*, 7 Harr. & Johns. 14; *Grubb's Administrators* v. *Clayton's Executor*, 2 Hayw. 378; *Wenman* v. *Mohawk Insurance Co.*, 13 Wend. 267; *Geiger* v. *Brown*, 4 McCord, 423; *Levering* v. *Rittenhouse*, 4 Wharton, 130.)

Yet by the same Courts it has been held that where the cause of action has accrued to the testator or intestate in his lifetime, the running of the statute will not be stayed by his death until the grant of administration. (*Rhodes* v. *Smethurst*, 4 Mees and Welsb. 42; *Freake* v. *Cranefeldt*, 3 Mylne & Craig Ch. 499.) It is not easy to perceive why, upon principle, any distinction should be made between the case where the cause of action accrues in the lifetime of the testator or intestate, and where it does not accrue until after his death. The only reason which can be given why the statute should not run in any case is that there is no person to sue, and therefore no person to whom *laches* can be imputed. But the reason applies to the latter case as well as to the former, and if an exception is allowed in favor of the former, it ought also to be extended to the latter.

The rule adopted by the English Courts found no foundation in the terms of the statute of 21 James I, Ch. 16, which they assumed to be reading. They founded the rule upon the so called equity of the fourth section of the statute, which excepted from the running of the statute three cases only: 1. Where judgment has been reversed by writ of error; 2. Where judgment has been arrested; and 3. Where an outlawry has been reversed. In all which it was provided "that the plaintiff, his heirs, executors, or administrators, as the case may require, may commence a new action or suit from time to time, within a year after such judgment reversed, or such judgment given against the plaintiff, or

outlawry reversed, and not after." A somewhat similar provision is found in the statute of this State. (Sec. 26.)

The interpretation which was given to the statute of James I was not only inconsistent with itself, but opposed to all the accredited rules of construction. It proceeded upon the theory that the case was within the reason of the exceptions, for which the statute itself provided, and that, therefore, Parliament could not have intended otherwise than was decided by the Courts—a most dangerous and pernicious mode of reasoning, which amounts to judicial legislation, and overturns the maxim that Courts are authorized to declare the law only, and not to make it. If they may add at all to the exceptions provided for in the statute, under the pretense that the case before them is of equal equity with those given in the statute, who is to fix the limit to their interpolations, or establish the line between legislative and judicial functions? If they may add one to the list of excepted cases, by parity of reason they may add another, and so on until the entire body of the statute has become emasculated, and the will of the judiciary substituted for that of the Legislature. How much more in keeping with the legitimate exercise of judicial functions are those cases where it has been held that the Courts can create no exceptions where the Legislature has made none. As in *Hall* v. *Wybourn*, 2 Salk. 420, where to a plea of the statute the plaintiff replied that the defendant was beyond sea, and it was held that the defendant's being beyond sea did not avoid the statute, because it was not at that time among the excepted cases. The case arose before the statute of Queen Anne, in which the defendant's being beyond the sea was for the first time made an exception. Also in *Boynton's Case*, cited in the last, where Mr. Chief Justice Bridgman held, that though the Courts were closed and no suits could be commenced, as in the case of civil war, yet the statute would bar the action, because it was general in its terms, and must affect all cases not expressly excepted. In *Aubry* v. *Fortescue*, 10 Mod. 206, it was said that the resolution in *Boynton's Case*

was often approved by Mr. Chief Justice Holt. (See, also, the opinion of Sir William Grant in *Beckford* v. *Wade*, 17 Vesey Jr. 87.)

Aside from the manifest conflict between the former and latter cases to which we have referred, the former are also at war with the universally accepted general rule that statutes of limitations are to be strictly construed. In *Demarest* v. *Wynkoop*, 3 Johns. Ch. 146, it was held that the Court could make no exception in favor of infants where the statute had made none. Said Mr. Chancellor Kent (page 142): "The doctrine of an inherent equity creating an exception as to any disability, where the Statute of Limitations creates none, has been long, and, I believe, uniformly exploded. General words in the statute must receive a general construction, and if there be no express exception, the Court can create none. It was agreed without contradiction, in *Stowell* v. *Zouch*, Plowd. 369 *b*, 371 C., that the general provision in statute of fines would have barred infants, *feme coverts*, and the other persons named in the proviso, equally with persons under no disability, if they had not been named in the exception or saving clause. So in *Dupleix* v. *De Roven*, 2 Vern. 540, the Lord Keeper thought it very reasonable that the Statute of Limitations should not run when the debtor was beyond sea; but there was no saving in the case—he could not resist the plea of the statute. The same doctrine is declared, in explicit and expressive terms, by Sir William Grant in *Beckford* v. *Wade*, 17 Vesey Jr. 87, who refers to the opinion of Sir Eardly Wilmot, in *Lord Buckinghamshire* v. *Drury*, (Wilmot's Opinions, 177, Sec. 194,) and to the decisions of the Common Law Courts, (*Hall* v. *Wybourn*, 2 Salk. 420; *Aubry* v. *Fortescue*, 10 Mod. 206,) that 'though the Courts of justice be shut by civil war, so that no original could be sued out, yet the Statute of Limitations continued to run.'"

In *McIvar* v. *Ragan*, 2 Wheat. 25, the Statute of Limitations of the State of Tennessee came before the Supreme Court of the United States. The action was ejectment. Both parties claimed under patents from the State of North

Carolina—the defendants under the junior patent and a possession of seven years, which, by the statutes of North Carolina and Tennessee, constituted a bar to the action if the possession was under color of title. The plaintiffs, to repel the defense of the statute, proved that no corner or course of the grant under which they claimed was marked, except the beginning corner. That the beginning, and nearly the whole land, and all the corners except one, were within the boundary of lands reserved by treaty for the Cherokee Indians, which were not ceded to the United States until within seven years before the commencement of the action. The laws of the United States prohibited all persons from surveying or marking any lands reserved by treaty for the Indians, and, accordingly, it was claimed on the part of the plaintiffs that the Statute of Limitations ought not to be allowed to run against them until from the date of the cession to the United States, because before that day they were prohibited by heavy penalties from making the necessary surveys to show that the defendant was within their lines. But Mr. Chief Justice Marshall said: "The case is admitted to be within the Act of Limitations of the State of Tennessee, and not within the letter of the exceptions. But it is contended that, as the plaintiffs were disabled by statute from surveying their land, and consequently from prosecuting the suit with effect, they must be excused from bringing it, and are within the equity though not within the letter of the exceptions. The Statute of Limitations is intended, not for the punishment of those who neglect to assert their rights, but for the protection of those who have remained in possession under color of title believed to be good. * * * Where the situation of a party was such as, in the opinion of the Legislature, to furnish a motive for excepting him from the operation of the law, the Legislature has made the exception. It would be going far for this Court to add to those exceptions. * * * It has never been determined that the impossibility of bringing a case to a successful issue, from causes of uncertain duration,

81

though created by the Legislature, shall take such case out of the operation of the Act of Limitations, unless the Legislature shall so declare its will." He then proceeded, however, to show that the plaintiff's case was not within the equity of the exceptions of the statute.

It is a universal principle of construction that Courts must find the intent of the Legislature in the statute itself. Unless some ground can be found in the statute for restraining or enlarging the meaning of its general words, they must receive a general construction, and the Courts cannot arbitrarily subtract from or add thereto. (*Beckford* v. *Wade, supra.*) The rule upon the subject of implied exceptions is well stated by Sir Eardly Wilmot in *Lord Buckinghamshire* v. *Drury, supra.* He said: "Many cases have been put where the law implies an exception, and takes infants out of general words by what is called a virtual exception. I have looked through all the cases, and the only rule to be drawn from them is, that where the words of a law, in their common and ordinary signification, are sufficient to include infants, the virtual exception must be drawn from the intention of the Legislature manifested by other parts of the law—from the general purpose and design of the law, and from the subject matter of it." And he cites the Statute of Limitations as an instance in which infants would be barred, if it were not for the introduction of an exception in their favor. This rule of Sir Eardly Wilmot is illustrated upon the other side by the first statute of Wills, 32 Henry VIII, instanced for that purpose by Sir William Grant in *Beckford* v. *Wade*, which declares that all and every person or persons may devise their lands by will. The language of the statute was broad enough to include infants and insane persons, yet without the aid of the subsequent explanatory statute of 24 Henry VIII, which it was, nevertheless, thought expendient to pass, the obvious intent of the statute being to make a will a competent mode of conveying land, it could not have been intended thereby to render persons competent to convey by will who were incompetent to convey by any other mode.

We have thus glanced at the condition of the law for the purpose of showing that the rule which the plaintiff has invoked has its foundation in judicial construction, and not in the language or general purpose and design of the statute, and that it is opposed to all the well established rules by which Courts should be guided in ascertaining and giving effect to the will of the Legislature, and for the further purpose of justifying ourselves, if any justification be required, in adopting the same rule of construction in relation to the Statute of Limitations which we uniformly apply to all other statutes—that is to say, to read it as it is written, without any arbitrary subtraction or addition to its meaning. The violation of this rule, as we consider, which we have noticed, can be accounted for only by referring it to the well known hostility of the Courts, at an early day, to Statutes of Limitations. That hostility no longer exists, and with it, in our judgment, its effects also should be allowed to pass away.

The statute provides that civil actions shall be commenced within certain periods therein prescribed "after the cause of action shall have accrued." The clause "after the cause of action shall have accrued" does not, in our judgment, imply, in addition, the existence of a person legally competent to enforce it by suit. If it did, why in subsequent parts of the statute provide that the statute shall not run in certain cases specified, which are excepted from the operation of the statute, because the persons in whose favor the cause of action exists are legally incompetent to sue? Obviously, if the term "right of action" implies the existence of a person competent to commence an action, there was no occasion for special provisions relieving persons not competent from the operation of the statute. Nothing further need have been said, for the Courts, after having ascertained the existence of a right of action, would have next inquired whether there was any person in existence legally competent to enforce it by suit, and computed the time accordingly. Again, if it was the intention to provide that the statute should run only where there is both a right of action and a person to assert .

it, why not insert a provision to that effect in general terms, and not take the hazard, by going into details, of omitting cases which ought, on the score of equal equities, to be included?

But, again, if we assume that the term " cause of action" contains also a general implication in relation to disabilities, what, in view of the subsequent specification of disabilities, becomes of the settled rule that general words are limited by special words subsequently employed, or the maxim, *expressio unius est exclusio alterius.*

But it is unnecessary to enlarge upon this point. Leave out of view the judicial interpretations which we have noticed, and which we have indicated our purpose to discard, there is no doubt as to the meaning of the statute. It must run in all cases not expressly excepted from its operation.

There is no provision of the statute excepting a case of this kind from its operation. The twenty-fourth section provides an exception, where the party entitled to bring an action dies after the cause of action has accrued, and before the expiration of the time allowed for commencing the action, and also where the party against whom an action may be brought dies before the expiration of the time allowed, but no provision is made excepting a case where the party who would have been entitled to sue dies before the cause of action has accrued.

Nor do we perceive any substantial reason why any exception should be made. If the cause of action does not accrue until after the death of the party who would have been entitled to sue, the persons interested in his estate—his creditors, heirs, and devisees—have the full time allowed by the statute in which to move in the matter to obtain a grant of administration and commence an action. Even if we recognized the doctrine of inherent equity, or implied exception, we are unable, independent of the judicial dogma that the term "cause of action" also implies a person to sue, to perceive that this case falls within the principle. It certainly has less equity than the case where the cause of action has accrued

in the lifetime of the party; yet in such a case the statute runs on, according to the cases to which we have referred, even though there may not be forty-eight hours of the limitation remaining at the time of his death. The Legislature of this State seems to have considered this latter result of the English statutes as unreasonable, and has therefore provided, as we have seen, that the time allowed to sue shall be extended, if necessary, not to exceed six months from his death, thus affording time to obtain a grant of administration and sue.

We may add, in conclusion, that in view of this provision in relation to cases where the cause of action has accrued before the death, to the effect that the time may be extended not to exceed six months from the death, it would be exceedingly anomalous to hold that if it accrues one day after death the time to sue shall be extended indefinitely, the extension to be measured only by the tardiness of those who are interested directly or indirectly in bringing the action.

We are also of the opinion that the Court below did not err in declining to instruct the jury that certain facts were settled, for the purposes of the trial, by the admissions of the defendant, in not denying them in his answer. Conceding the denials to have been defective, the plaintiff had gone into the evidence in relation to them without questioning their sufficiency, and we think it was too late to do so after the testimony was in and the time for instructions had arrived. Where the defendant has intentionally admitted certain allegations by not denying them, it is proper, to avoid all mistakes on the part of the jury, for the Court to so instruct; but where, as in the present case, the question is as to the sufficiency of the denials, we do not consider it the proper practice. By introducing testimony the plaintiff waived all objection to the denials upon that ground. He treated the denials as sufficient, and thus misled the defendant. If he regarded the denials as insufficient, and desired to take advantage of that circumstance, he should have moved to strike them out, upon the ground that they were

sham and irrelevant. Sham and irrelevant answers and defenses, and so much of any pleading as may be irrelevant, redundant, or immaterial, may be stricken out on motion. (Practic Act, Sec. 50.) Answers consisting in whole or in part of defective denials, which do not explicitly traverse the material allegations of the complaint, are, as to such denials, sham and irrelevant within the meaning of the statute. (*The People* v. *McCumber*, 18 N. Y. 315; *Gay* v. *Winter*, 34 Cal. 153.)

Under the foregoing views the remaining points require no special notice.

Judgment and order affirmed.

Mr. Justice RHODES expressed no opinion.