[Civ. No. 8381. Third Dist. Mar. 29, 1954.]

WILLIAM N. GRAYBIEL, as Special Administrator, etc., et al., Respondents, v. VINCENT M. BURKE et al., Appellants.

Tebbe & Correia, Joseph P. Correia and Samuel F. Friedman for Appellants.

Mark M. Brawman, Taylor, Taylor & Taylor and L. N. Lorenzen for Respondents.

SCHOTTKY, J.—This is an appeal from an order granting an injunction pendente lite restraining appellants (defendants below) from committing waste upon or cutting or removing timber or logs from certain real property located on the slopes of Mt. Shasta, and further restraining them from selling or sawing logs already removed and from selling lumber already produced therefrom.

The record shows that William Wallace Stewart acquired the real property here in controversy by a patent from the

United States Government in 1890. Four years later, in 1894, Stewart married Annie Boomer; there is no showing that he ever was married before. Stewart retained ownership of the property until his death in 1939. He died intestate and was survived by his widow, Annie Boomer Stewart, and by three daughters, respondents Mason, Nelson and Forbes. It does not appear that any administration proceedings were had in connection with his estate until the appointment of respondent Graybiel as special administrator, in 1952.

Appellant Vincent M. Burke (hereinafter called appellant Burke) was engaged in the real estate business in Los Angeles, dealing principally in tax-delinquent lands. He obtained a title report covering the land involved here, which showed title in Stewart. Thereafter, in April, 1952, he got a certified copy of Stewart's death certificate from the State Department of Public Health; this showed the name of the widow and the home address. Burke then went to Modesto where the widow, Mrs. Stewart, resided, and obtained from her a quitclaim deed to the property. This deed is dated May 19, 1952, and Burke paid $100 for it. At the time of this transaction Mrs. Stewart did not remember the property, but before agreeing to sell her interest she called her attorney, Mr. Graybiel, in Turlock and had Burke talk with him by telephone. Burke told both Mrs. Stewart and Mr. Graybiel that the land had been sold to the state for delinquent taxes, although the title report apparently showed that all taxes had been paid except those for the tax year 1952-1953. Mrs. Stewart was then over 75 years of age. Burke subsequently obtained a second quitclaim deed from Mrs. Stewart, this one dated September 13, 1952. The second deed corrected an error in the property description.

Sometime after obtaining the first quitclaim deed, Burke engaged appellant Alexander to cut and log *all* of the merchantable timber growing on the tract in question. This was a complete logging contract and covered all operations from the falling of the trees to delivery of the logs at the mill. Alexander started to cut the timber on about August 15, 1952, and the first logs were removed from the property on September 12th. Meanwhile, during the first week in August, 1952, Burke had contracted to sell the logs to appellant De-Mers Milling and Lumber Company (hereinafter called appellant Milling Company) which operated a sawmill near

Yreka. The contract called for delivery of the logs at the millpond. Both of the above contracts were oral.

On September 17, 1952, respondent Graybiel petitioned the Superior Court in Stanislaus County for special letters of administration in the matter of Stewart's estate. The deceased was a resident of that county at the time of his death. The petition alleged, upon information and belief, that persons unknown were committing waste upon timber land of the estate in Siskiyou County, and further alleged that there was insufficient time to notify all interested persons in the ordinary manner. The order of appointment was made and letters were issued appointing respondent Graybiel special administrator of the estate, with the powers of a general administrator. This was done on September 17th, and on that same day respondent Graybiel, as special administrator, brought the present action against Burke et al., in Siskiyou County. The action is one in ejectment and for triple damages, and the complaint prayed, among other things, for a temporary restraining order and an order to show cause why an injunction should not issue. The complaint alleges Graybiel's capacity as special administrator, alleges that as such administrator he is entitled to possession of all the land in question, and alleges, upon information and belief, the entry into possession by appellants, their acts constituting waste, the resulting damage to the land, and the fraudulent purpose prompting the entry. A temporary restraining order and order to show cause were issued, and on September 24, 1952, appellants made a return, wherein they admitted Burke's possession of the property and the logging operations thereon, and, by way of separate affirmative defenses, alleged that Burke was the owner of and entitled to possession of the land, that respondent Graybiel's cause of action was barred by the statute of limitations (Code Civ. Proc., §§ 318 and 319), and that Graybiel was guilty of laches in bringing the action, and appellants would be irreparably damaged by an injunction, in view of their expenditures and commitments based on Burke's title.

The order to show cause was heard on September 24, 25, 29, 30, and October 1, 1952. Just prior to the adjournment on September 25th, the court granted counsel's motion to allow amendment of the complaint so as to bring in the three daughters as parties plaintiff. The amendment to the complaint was filed and served on September 29th, the day when the hearing was next resumed. It alleges that respondents

Mason, Nelson and Forbes are the surviving daughters of the decedent, Stewart; that the decedent died intestate; and that the daughters and their ancestor and predecessor were seized or possessed of the real property for more than five years prior to commencement of the action. The amendment contains a separate prayer asking that respondents be restored to possession and that appellants be enjoined from trespassing and committing waste on the premises.

It developed at the hearing that approximately two million board feet of timber, out of an estimated four million board feet available on the land, had already been cut when the restraining order went into effect. Of this, some 470,000 board feet had been delivered, in logs, to appellant milling company which had sawed more than half of it and sold the lumber, other than the "number four" grade. The logs remaining on the land were subject to weathering and substantial depreciation in value, unless removed and used. The losses which appellant Alexander and appellant milling company would suffer, in the event of a forced shutdown of the logging operations, were also brought out at the hearing. Following the hearing the trial court made its order granting a preliminary injunction and this appeal is from said order.

Appellants' principal contention is that the action by respondent Graybiel, as special administrator, was barred by sections 318 and 319 of the Code of Civil Procedure and that, therefore, the order granting the injunction was erroneous. They assert that the order was obtained upon motion of respondent Graybiel alone and that the daughters of Stewart are not respondents upon this appeal. However, as already pointed out, the record shows that during the hearing of the evidence the court granted a motion to amend the complaint so as to bring in the three daughters as parties plaintiff, and that said amendment was filed. The hearing proceeded and at its conclusion the preliminary injunction was granted, so there is no merit in appellants' contention that the order was based upon the original complaint rather than upon the complaint as amended.

As to appellants' contention that the action was barred by the statute of limitations, they argue that upon Stewart's death, in 1939, title to the real property vested in his heirs at law (Prob. Code, § 300), and with it presumptive possession (Code Civ. Proc., § 321). They argue further that the widow's title and possession were acquired by appellant Burke who actually entered upon the land before respondent

Graybiel was appointed special administrator. Appellants then argue that neither the special administrator nor his predecessor (the decedent Stewart) was seized or possessed of the property within five years before commencement of the action and that the action was therefore barred by operation of sections 318 and 319 of the Code of Civil Procedure. Section 318 provides as follows:

"No action for the recovery of real property, or for the recovery of the possession thereof, can be maintained, unless it appear that the plaintiff, his ancestor, predecessor, or grantor, was seized or possessed of the property in question, within five years before the commencement of the action."

Section 319 provides:

"No cause of action, or defense to an action, arising out of the title to real property, or to rents or profits out of the same, can be effectual, unless it appear that the person prosecuting the action, or making the defense, or under whose title the action is prosecuted, or the defense is made, or the ancestor, predecessor, or grantor of such person was seized or possessed of the premises in question within five years before the commencement of the act in respect to which such action is prosecuted or defense made."

Respondents in reply contend that the action by the special administrator is not barred by the statute of limitations, because his right to possession of the property relates back to the date of decedent's death and he therefore was possessed of the property within five years before commencing the action. Respondents quote the following language in *Jahns* v. *Nolting*, 29 Cal. 507, at 510:

". . . At common law the title vested in the administrator, by relation, at the time of the death of the deceased; and, under the system in force here, the administrator's control of the property, by relation, extends back to the same point of time, and he is deemed in law from that time to have the possession, or to be entitled to the possession of the personal property, as the case may require. The administrator may, therefore, institute an action in the nature of the action of trover, in his own name—his special property being sufficient for that purpose—against a person who, after the death of the deceased, and before the issuing of the letters of administration, converts to his own use the personal property of the estate of the deceased. His right of action in such case is the same as in case of a conversion after his appointment as administrator."

■ It is settled law in California that proceedings for the probate of a will or for letters of administration are not subject to any statute of limitations. (*Estate of Hume,* 179 Cal. 338 [176 P. 681].) Section 460 of the Probate Code authorizes the appointment of a special administrator to take possession of the decedent's estate where no application has been made for letters testamentary or of administration and the circumstances require the immediate appointment of a personal representative. Section 461 of the code provides that the appointment may be made *at any time* without notice or with such notice to such interested persons as the court may deem to be reasonable, and section 463 provides that the special administrator *must take possession* of the real and personal property of the decedent and preserve it from damage, waste and injury, and that he may commence and maintain suits and other legal proceedings for such purpose.

■ It is also settled that all of the statutory provisions in all the codes must be read together and harmonized, if possible. As stated in *In re Porterfield,* 28 Cal.2d 91, at page 100 [168 P.2d 706, 167 A.L.R. 675] : ''It is a well-recognized rule that for purposes of statutory construction the codes are to be regarded as blending into each other and constituting but a single statute. [Citing cases.]'' See also *Guardianship of Thrasher,* 105 Cal.App.2d 768 [234 P.2d 230].

The trial judge in an able memorandum opinion discussed the issues raised upon the application for a preliminary injunction, which are the same issues that are raised upon this appeal. We believe that said opinion correctly analyzes and determines said issues and adopt same as part of our opinion. We quote therefrom as follows:

''The question before this court, is Does the evidence show that plaintiff, his ancestor, predecessor, or grantor was seized or possessed of the real property involved in this action, within five years before the commencement of this action? If it does not the action is barred and the motion must be granted.

''Section 581, Probate Code, provides, that the administrator is entitled to the possession of all the real and personal property 'of the decedent,' and may maintain an action for the possession of the real property. It has been held the administrator may bring this action without joining the heirs (*Schade* v. *Stewart,* 205 Cal. 658 [272 P. 567]). Strictly speaking the decedent has no real property after his death, because section 300, Probate Code, states 'When a person

dies, title to his real and personal passes . . . to the persons who succeed to his estate,' under the laws of succession. Therefore this section must mean he is entitled to maintain an action to recover possession of real property title to which stands in the heirs at law of decedent, but to which decedent held title at the time of his death. ■ His suit must be based on their title, and his right to possession for a limited purpose of paying decedent's debts. ■ The heirs are not personally liable for decedent's debts, but they take title to his property subject to those debts. ■ The statute of limitations does not run against those debts while there is no administrator appointed no matter how long there is a vacancy (*Hibernia Sav. & Loan Soc.* v. *Farnham*, 153 Cal. 578 [96 P. 9, 126 Am.St.Rep. 129]; 7 C.L.R. page 72, note 29). The heirs, and every one that takes under them, take the property subject to those debts. ■ The right of possession which the administrator has to enable to maintain the suit being only for a limited purpose, is not a freehold estate, therefore it does not carry seisin with it. The seisin is in the heirs at law, and remains there until they are disseised. Their right to possession, that is the heirs' right to possession and seisin descended upon them immediately upon decedent's death, and remained with them until an administrator was appointed, and then the administrator became entitled to the right of possession for the limited purpose, and they still held the seisin.

■ ''An administrator is a court appointed functionary, somewhat the same as a receiver, a curator, a guardian, a trustee, but perhaps not exactly the same. He has no personal interest. His duty is to marshal the decedent's assets, apply the part of them needed to pay his debts, and pass the residue to his heirs, all under court direction. So in a suit of this kind his right to possession is based on their right to possession, and their seisin. While he may be the nominal plaintiff in this suit in ejectment, and while the sections in question use the word 'plaintiff' just as section 581 of the Probate Code uses the words 'property of the decedent' it must be held to mean property of the heirs at law, owned by the decedent at the time of death. So plaintiff must mean the parties who hold the title to the property, and whose title and right to possession is the basis of his action.

''The seisin of the holders of title, that is the heirs, continues until they are disseised by an adverse possessor. This is so because sections 318 and 319, Code of Civil Procedure,

must be read together with section 1007 of the Civil Code (17 C.L.R. 7 390 et seq.) It is not shown in this case that there was any person in adverse possession, if at all, not for over one year. Therefore the seisin and right to possession on which this action is based is within the five year period.

"There is no question but that the statute of limitations will run against the administrator, and the heirs, or any holder of legal title, but there must be an adverse possessor to start the statute running. There is not a case cited that holds otherwise. The case of *Tynan* v. *Walker*, 35 Cal. 634 [95 Am.Dec. 152], cited by defendants' counsel, has a lot of language in it that might lead one astray, but when carefully considered is illustrative of the point just stated. In that case Walker the adverse possessor took adverse and hostile possession in 1854, just after Bell's death, and remained in such possession until 1866, almost thirteen years when an administrator was appointed of Bell's estate. In that case the heirs' title had gone by adverse possession, and they had been disseised, so the administrator had no title to stand on.

. . . . . . . . . . . . .

". . . It seems to me the fallacy of defendant's position here can be demonstrated if we follow the matter through to a final conclusion as to what would be the result if counsel is correct. According to him, if a man dies owing many debts, and having much property, and with heirs at law, and no administrator is appointed for his estate until after five years from the date of his death, and altho no one takes adverse possession of the land owned by the decedent at the time of his death, until possibly one year before the letters of administration were issued, and the administrator's suit commenced, and altho decedent's debts were not outlawed, and altho the heirs took the property subject to those debts, the administrator could not bring suit to recover the property to pay the debts, and would have to report 'no property.' If he says the heirs might bring the suit and recover the property, and it would still be subject to the debts, how is the administrator going to get it in his possession to pay those debts? If he started suit against them, they could plead the bar of the statute. They could not pay the debts themselves and relieve the property, because there is no procedure at law for them to ascertain just what the debts were. Perhaps the administrator could publish notice to creditors, and in that manner find out what the debts were. How was he to pay them, depend on the good graces of the heirs

to voluntarily sell the property and pay the debts, or if they did not could he as administrator bring suit against them to pay the debts. We would find ourselves in a fine dilemma. It even might be possible by following this procedure of delaying five years before administration, and pleading the bar of the statute against the administrator and thus prevent him from taking possession of the property to pay the debts, for the heirs to dodge the debts entirely. This cannot be the law.

"The court is of the opinion that as long as the heirs at law have not lost their title by adverse possession, the administrator may bring suit to recover possession, even tho there was no administration of decedent's estate for more than five years after his death.''

We are satisfied that the respondent special administrator's right to bring the action to recover possession of the real property and to enjoin appellant from cutting timber thereon or removing timber therefrom was not barred by sections 318 and 319 of the Code of Civil Procedure. To sustain appellant's contention upon this point would indeed create an absurd situation and would permit the law to be improperly used by designing persons. While the administrator's right to maintain the action might be lost if someone actually in possession of the property had established a right to it by adverse possession, it would not be lost where, as in the instant case, appellant entered into possession of the property only a few months before the action was commenced.

We conclude, therefore, that even if the respondent special administrator were the only party plaintiff the court would have been fully justified, under the evidence and the law, in granting the preliminary injunction. But in the instant case it appears that the deed from the widow to appellant would in any event only give him a one-third interest in the property, and that the three daughters of Stewart were the owners of a two-thirds interest in the property. As hereinbefore pointed out, the daughters were by order of the court and by appropriate amendment to the complaint made parties plaintiff during the progress of the hearing and the preliminary injunction was issued in their behalf also. Appellant Burke, as a tenant in common, had the right to occupy the whole of the property, subject to the right of the special administrator, and possession by him normally would be deemed to be possession by all of the heirs. (*Johns* v. *Scobie*, 12 Cal.2d 618, 623 [86 P.2d 820, 121 A.L.R. 1404].) How-

ever, his acts in contracting to sell *all* of the merchantable timber, and in engaging appellant Alexander to conduct the logging operations, manifested an intention on his (Burke's) part to hold exclusively for himself and amounted to an ouster of the other cotenants who thereupon became entitled to recover common possession of the property. (*Akley* v. *Bassett,* 189 Cal. 625, 642 [209 P. 576]; *Zaslow* v. *Kroenert,* 29 Cal.2d 541, 548 [176 P.2d 1].) The cutting of all of the merchantable timber, when Burke had at most an undivided one-third interest, would undoubtedly constitute waste (*Hihn* v. *Peck,* 18 Cal. 640, 643), and an injunction would lie in favor of the ousted cotenants (*Fuller* v. *Montafi,* 55 Cal.App. 314, 320 [203 P. 406]). Both the special administrator and the daughters were persons aggrieved by the waste and, as such, entitled to bring an action for an injunction and treble damages. (Code Civ. Proc., § 732.)

No other points raised require discussion.

The order granting a preliminary injunction is affirmed.

Peek, J., and Paulsen, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.