[Civ. No. 19789.   First Dist., Div. Two.   Nov. 29, 1961.]

RICHARD W. GRAHAM, as Administrator with the Will Annexed, etc., Plaintiff and Appellant, v. BANK OF CALIFORNIA NATIONAL ASSOCIATION, Individually and as Trustee, etc., Defendant and Respondent; SHRINERS HOSPITALS FOR CRIPPLED CHILDREN, Intervener and Respondent.

Richard W. Graham, in pro. per., and Koster & Kohlmeier for Plaintiff and Appellant.

Pillsbury, Madison & Sutro, G. H. Eckhardt, Jr., and M. D. L. Fuller, Jr., for Defendant and Respondent.

J. Clark Benson and Simeon E. Sheffey for Intervener and Respondent.

SHOEMAKER, J.—This is an appeal by plaintiff from a summary judgment granted in favor of defendant bank and intervener hospital. Plaintiff Richard W. Graham, as administrator with the will annexed of the estate of Adelaide L. Trull, brought this action to recover possession and control of certain real and personal property held in trust by defendant Bank of California National Association. Leave to intervene was subsequently granted to the residual beneficiary of the trust, Shriners Hospitals for Crippled Children.

The record shows the following undisputed facts. Adelaide and Charles Trull were married in 1913. At the time she had a son, John Biller, by a previous marriage. Adelaide died in 1946, and left a holographic will leaving her one-half of the community property of herself and Charles to her son John. Although John had this will shortly after its execution, he did nothing about it and in 1951 Charles died. In the meantime, Charles, thinking his wife had died intestate, did not proceed with any probate as all their property was community and stood in his name. He made his will in which he took care of John and his wife, and set up a testamentary trust of all of his property, which provided that John and the

testator's sister were to receive certain income from the trust until their death, at which time the Shriners Hospitals were to receive the trust estate. This will of Charles Trull was regularly probated and shortly after the commencement of probate proceedings John produced his mother's will and showed it to several bank officials and the attorney for the estate, all of whom advised him to seek independent counsel as to his rights and what action he should take, but so far as is known, all he did was to deposit the will with the county clerk in San Francisco on February 7, 1951.

At the time of the disclosure of the will to the attorney for the estate, John expressed his satisfaction with things as they were under his stepfather's will, and that he did not propose taking any action. In due course a decree of determination of heirship, a decree of partial distribution, and a final decree of distribution, were entered in Charles Trull's estate, in accordance with the terms of the will; John accepted the benefits of the trust and up to the time of his death in 1957 had received some $34,000 from the estate.

On April 1, 1959, the will of Adelaide Trull was offered for probate. This was two years following John's death, eight years after the death of Charles, and thirteen years after the death of Adelaide. The proceedings were commenced at the instance of Mildro Biller, the widow of John.

On August 7, 1959, this action was commenced and in due course the present motion for summary judgment on the grounds that the action was barred by the statute of limitations, laches, estoppel, and election, was successfully interposed.

The granting of summary judgment may be upheld only where the affidavits of the party moving for such judgment state facts which, if proved, would be sufficient to sustain a judgment in his favor, and the affidavits of the opposing party present no triable issue of fact. (*Mansfield* v. *Kaiser* (1959) 176 Cal.App.2d 632, 636 [1 Cal.Rptr. 555].) Although the appellate court's scope of review is thus strictly limited, the affidavits in the case at bar clearly show that appellant's action is barred by the statute of limitations and the summary judgment must be affirmed.

This action is brought under Probate Code, section 573, to recover possession and control of assets belonging to the estate. The statute of limitations applicable to an action brought to recover real property or the rents or profits thereof is five years. (Code Civ. Proc., §§ 318, 319.) A three-year

limitation applies to actions for the recovery of personal property (Code Civ. Proc., § 338, subd. 3) and a four-year limitation applies to any action not otherwise provided for (Code Civ. Proc., § 343).

Appellant contends, however, that no statute of limitations can begin to run until a cause of action has accrued, and argues that since he, as administrator, could not have maintained the present action upon an unprobated will, no cause of action ''accrued'' until the will was offered for probate. Appellant urges that the delay of 13 years in offering the will for probate is not a bar, since there is no statute of limitations in California on the submission of a will for probate. In support of this proposition, appellant cites *Graybiel* v. *Burke* (1954) 124 Cal.App.2d 255 [268 P.2d 551]. The *Graybiel* case, far from sustaining appellant's position, clearly reveals the fallacy of appellant's reasoning. In that case, the decedent, William Stewart, died in 1939, survived by his wife and three daughters. No administration of his estate was had until 1952, when plaintiff Graybiel was appointed special administrator. Just prior to Graybiel's appointment, defendant Burke obtained from decedent's widow a deed to certain real property which had been owned by the decedent. Graybiel was then appointed administrator and obtained an injunction restraining defendant from cutting or removing timber on this property. On appeal from the granting of the injunction, appellant asserted that the action was barred by the statute of limitations, since he had entered onto the land prior to the appointment of respondent as administrator. The court stated the rule that proceedings for the probate of a will or for letters of administration are not subject to any statute of limitations. However, the court then went on to point out that immediately upon a decedent's death title to all his property, both real and personal, passes to the person to whom it is devised or bequeathed by his last will. (Prob. Code, § 300.) Since the statute of limitations may certainly run against this heir or devisee, the administrator, when subsequently appointed, may be disseized and have no title to stand upon. The court stated, at page 263: '' 'There is no question but that the statute of limitations will run against the administrator, and the heirs, or any holder of legal title, but there must be an adverse possessor to start the statute running. There is not a case cited that holds otherwise. The case of *Tynan* v. *Walker*, 35 Cal. 634 [95 Am.Dec. 152], cited by defendants' counsel, has a lot of language in it that might lead

one astray, but when carefully considered is illustrative of the point just stated. In that case Walker the adverse possessor took adverse and hostile possession in 1854, just after Bell's death, and remained in such possession until 1866, almost thirteen years when an administrator was appointed of Bell's estate. In that case the heirs' title had gone by adverse possession, and they had been disseised, so the administrator had no title to stand on.' '' The court then affirmed the decision of the lower court on the ground that appellant had been in possession of the land for less than a year prior to respondent's appointment and could not, therefore, be deemed to have acquired title by adverse possession.

The *Graybiel* case clearly indicates that appellant's argument has no merit.

Despite the express language of the *Graybiel* case, appellant contends that the acts of an heir or beneficiary under a will can have no effect on the right of a decedent's personal representative to reduce the estate to his possession for purposes of administration. Appellant relies on *Smith* v. *Barrick* (1919) 41 Cal.App. 28 [182 P. 56] ; *Phelps* v. *Grady* (1914) 168 Cal. 73 [141 P. 926] ; and *Blair* v. *Hazzard* (1910) 158 Cal. 721 [112 P. 298]. All three authorities were distinguished by the California Supreme Court in *Johns* v. *Scobie* (1939) 12 Cal.2d 618 [86 P.2d 820, 121 A.L.R. 1404]. In the *Johns* case, the decedent died intestate in 1924, after giving his nephew a deed covering a portion only of certain real property on which the decedent and the nephew had been jointly living. The nephew recorded the deed upon his uncle's death and continued to live on the property. In 1936 appellant was appointed administrator of the uncle's estate, and the nephew then brought suit against appellant to have the deed reformed to cover the entire plot, alleging that he had adversely possessed the whole as against the other heirs. The court, in holding that the elements of adverse possession had been established, stated, at pages 627-628 : ''It is further objected that even if plaintiff could and did hold adversely to his coheirs, the other tenants in common, he did not establish adverse possession against the estate. The cases relied on in this connection, however, are clearly distinguishable. They involve situations where administration was commenced, and thereafter an heir or devisee made his entry and set up his hostile claim. In such cases it is properly held that the heir or devisee cannot acquire title by adverse possession against the executor or administrator, any more than can a tenant

against his landlord, while holding under the tenancy. (See *Blair* v. *Hazzard,* 158 Cal. 721 [112 P. 298]; *Phelps* v. *Grady,* 168 Cal. 73 [141 P. 926]; *Smith* v. *Barrick,* 41 Cal.App. 28 [182 P. 56].)

"The instant case presents an entirely different situation. Plaintiff went into possession and recorded his deed twelve years before the issuance of letters of administration. He did not take the property during administration, or from the estate. His title by adverse possession, if it could be acquired, was complete before administration began. The mere possibility of some future proceedings in administration could not completely bar the acquisition of an adverse title. It would seem clear that if adverse possession can be gained against the other heirs, who have the legal title, it certainly can be gained against such claims as the executor or administrator may have for purposes of administration."

The facts set forth in appellant's complaint reveal that John Biller made no effort whatever during his lifetime to assert control over the assets to which his mother's will entitled him. The facts alleged by appellant also reveal that Charles Trull asserted complete dominion and control in his own right over all the property, both real and personal, during his lifetime, and that respondent bank continued to assert similar control over the property upon his death. Although this control was clearly so open, notorious and hostile as to be termed a "conversion" by appellant, John Biller chose to take no steps to assert his rights.

Appellant argues, however, that Charles Trull's retention of control over the property after the death of Adelaide Trull cannot be deemed adverse to John Biller, because Probate Code, section 202, specifically provides that a surviving husband shall retain control over his wife's half of the community property until her will is administered. Probate Code, section 202, provides that where community property is willed by the wife, "the husband, pending administration, shall retain the same power to sell, manage and deal with the community personal property as he had in her lifetime; . . ." We believe that section 202 was never intended to apply to a situation where the wife's will was not even produced during the husband's lifetime. Even were we to assume the validity of appellant's position, still section 202 does not authorize the husband to will the property as his own in violation of the provisions of his wife's will. The

444

will of Charles Trull was duly administered and the property distributed pursuant to its terms on July 15, 1952. From this moment on, the property was clearly being held adverse to the legatee of Adelaide Trull. Since all the applicable statutes of limitation had run during the period commencing July 15, 1952 and ending on August 7, 1959 (when the instant action was commenced), it becomes unnecessary to determine whether the possession of Charles Trull during his lifetime can be deemed adverse to appellant's interest.

Appellant's action is clearly barred by the statute of limitations, and it becomes unnecessary to discuss the equally good defense of estoppel or any of the other defenses raised by respondents.

Judgment affirmed.

Kaufman, P. J., and Agee, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 24, 1962.