Opinion
 

 FRIEDMAN, Acting P. J.
 

 At the time of the events before us, the statute of limitations governing medical malpractice actions was Code of Civil Procedure section 340.5, as adopted in 1970.
 
 [1]
 
 The 1970 statute described the deadline for suit in the following terms: “. . . four years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever first occurs. This time limitation shall be tolled for any period during which [the defendant] has failed to disclose any act, error, or omission upon which such action is based and which is known or through the use of reasonable diligence should have been known to him.”
 

 Petitioner Wells Fargo Bank is administrator of the estate of Dr. Hal C. Holland. It is named as one of several defendants in a medical malpractice action filed by Robert T. Fisher. In the trial court Wells Fargo moved for a partial summary judgment, contending that Fisher’s medical malpractice claim was partially barred by the statute of limitations. The trial court denied the motion. In the interest of judicial economy we issued an alternative writ of mandate to review the trial court’s ruling.
 

 The central facts are undisputed. For the most part they are drawn from Fisher’s responses to requests for admissions. Dr. Holland treated Fisher for spinal problems for a 20-month period from July 1967 to March 1969. He performed a diagnostic myelogram and a laminectomy. During that period Dr. Holland was an individual practitioner. For the
 
 *894
 
 next three and one-half years Fisher received no treatment. He returned to Dr. Holland in September 1972. By that time Dr. Holland had entered into a group practice with two associates. From then until September 17, 1973, he received treatment, including a myelogram and two laminectomies, from Dr. Holland and his associates. Both the 1967-1969 and 1972-1973 treatment covered the same limited spinal area.
 
 [2]
 
 Fisher’s responses to interrogatories admit that on August 6, 1974, he retained his present counsel to represent him “in connection with” a prospective malpractice suit against Dr. Holland.
 

 Doctor Holland died on September 21, 1974. Wells Fargo, his administrator, published a first notice to creditors in January 1975. Fisher filed his malpractice action two months later in March 1975. The complaint named as defendants Dr. Holland, his two associates and their medical corporation, and a hospital. It made no reference to Dr. Holland’s death. It alleged (inaccurately) that Fisher had become a paying patient of the doctors in December 1971 and had continued in their care until 1973, during which time they negligently performed myelograms, laminectomies and fusions upon him. The complaint alleged that defendants did not disclose their malpractice. It did not allege that the defendants knew or should have recognized their malpractice.
 

 In March 1975 Fisher filed a probate claim with the estate, incorporating by reference his recently filed malpractice complaint. The claim was rejected. Fisher then filed an amended complaint (really a supplemental complaint), alleging filing and rejection of the probate claim. The amended complaint made no change in the malpractice allegations. Wells Fargo filed an answer, raising the bar of the statute of limitations.
 

 In May 1976 Fisher moved to amend the complaint, declaring that his complaint had mistakenly referred to 1971 as the year in which Dr. Holland had first treated him;- that Fisher had in fact become a paying patient of the defendant-doctors in 1967 and Dr. Holland had performed a lumbar laminectomy on him in 1968. His proposed amended complaint specified 1967 instead of 1971 as the starting point of the treatment
 
 *895
 
 and of the alleged malpractice. Over Wells Fargo’s opposition, the trial court permitted the amendment. Wells Fargo then requested admissions and Fisher responded. Wells Fargo’s unsuccessful motion for partial summary judgment followed.
 

 Petitioner seeks to exclude the 1967-1969 treatment from the malpractice claim on the ground that it is barred by the four-year period of limitations prescribed by the 1970 version of section 340.5. Petitioner also contends that Fisher’s amendment of his complaint to embrace the 1967-1969 treatment did not “relate back” to the commencement of the action but was barred by failure to include damages for that treatment in his probate claim.
 

 The complaint alleges that the defendants did not disclose their malpractice but not that they knew or should have recognized it; hence it does not invoke the tolling provision in the last sentence of section 340.5. (See Comment (1971) 2 Pacific L.J. 663, 670.) The issue is whether an undisputed sequence of events arouses the one- or the four-year bar of
 
 [3]
 
 When there is no dispute over the decisive facts, the question of limitations is one of law, amenable to disposition by summary judgment.
 
 (Wells Fargo Bank
 
 v.
 
 Kincaid
 
 (1968) 260 Cal.App.2d 120, 123 [66 Cal.Rptr. 832];
 
 Graham
 
 v.
 
 Bank of California
 
 (1961) 197 Cal.App.2d 438, 440 [17 Cal.Rptr. 279].)
 

 Before the advent of section 340.5 the period of limitations on medical malpractice actions had been one year from the date of the injury’s discovery. (See generally, 2 Witkin, Cal. Procedure (2d ed.
 
 1970)
 
 Actions, § 316, pp. 1158-1160.) The 1970 version of section 340.5 preserved the one-year discovery rule but circumscribed it with an outer limit of four years.
 
 (Larcher
 
 v.
 
 Wanless
 
 (1976) 18 Cal.3d 646, 658 [135 Cal.Rptr. 75, 557 P.2d 507].) The four-year rule in turn was tempered by the statute’s last sentence, tolling the four-year period if the physician concealed the harm.
 
 (Sanchez
 
 v.
 
 South Hoover Hospital
 
 (1976) 18 Cal.3d 93, 101 [132
 
 *896
 
 Cal.Rptr. 657, 553 P.2d 1129].) The “injuiy” which placed the four-year period in motion was the damaging effect of the wrongful act rather than the act itself.
 
 (Larcher
 
 v.
 
 Wanless, supra,
 
 18 Cal.3d at p. 656, fn. 11.)
 

 A prime factor is Dr. Holland’s death on September 21, 1974. If the period of limitations on a tort claim has not expired before the potential defendant’s death, its passage halts at that point; the special timetable for probate claims and suits against estates then goes into operation. (Code Civ. Proc., § 353; Prob. Code, §§ 700, 707;
 
 Zapata
 
 v.
 
 Meyers
 
 (1974) 41 Cal.App.3d 268, 271-272 [115 Cal.Rptr. 854];
 
 Hurlimann
 
 v.
 
 Bank of America
 
 (1956) 141 Cal.App.2d 801, 805-806 [297 P.2d 682].) Thus passage of the one- and four-year limitation periods fixed by section 340.5 halted upon Dr. Holland’s death on September 21, 1974.
 
 [4]
 
 To determine whether the action is barred, we calculate the time between accrual of the claim and Dr. Holland’s death.
 

 The statute declares that discovery of the injury initiates the one-year period. On the present record, the earliest date for Fisher’s discovery was August 6, 1974, when he employed counsel to bring a malpractice suit. Dr. Holland’s death occurred less than two months later. The lawsuit thus satisfies the one-year-from-discovery requirement of section 340.5. The central problem is whether the four-years-from-injury clause of the statute bars that part of the claim based upon Dr. Holland’s alleged malpractice during the twenty-month period from July 1967 to March 1969. A mechanical application of the four-year statute would exclude that period of treatment, which came to an end more than five years before Fisher’s “discovery” of malpractice and more than five years before Dr. Holland’s death.
 

 Fisher invokes
 
 Huysman
 
 v.
 
 Kirsch
 
 (1936) 6 Cal.2d 302 [57 P.2d 908], which, he contends, defers accrual of his claim until his treatment by Dr. Holland ended in September 1973; thus, he argues, his claim for the 1967-1969 treatment is not barred.
 

 Huysman
 
 v.
 
 Kirsch, supra,
 
 is generally viewed as the progenitor of the California rule deferring accrual of a medical malpractice claim until the
 
 *897
 
 injury’s discovery.
 
 [5]
 
 It is also cited for authority for deferment of accrual during continuing treatment
 
 [6]
 
 and during a continuing physician-patient relationship.
 
 [7]
 
 A number of authorities in other states postulate end-of-treatment as the point to which accrual is postponed.
 
 [8]
 
 Fisher interprets the
 
 Huysman
 
 doctrine of deferred accrual as an end-of-treatment rule.
 

 All these elliptical descriptions—discovery, continuing treatment, continuing relationship, end-of-treatment—are verbal variations of an underlying theme. In human transactional terms, the prime incentive of the
 
 Huysman
 
 deferment was the patient’s continuing reliance on the professional skill of the doctor while the doctor was treating him.
 
 (Huysman
 
 v.
 
 Kirsch, supra,
 
 6 Cal.2d at p. 309; see also
 
 Sanchez
 
 v.
 
 South Hoover Hospital, supra,
 
 18 Cal.3d at p. 102;
 
 Heyer
 
 v.
 
 Flaig
 
 (1969) 70 Cal.2d 223, 233, fn. 7 [74 Cal.Rptr. 225, 449 P.2d 161].) The
 
 Huysman
 
 opinion essayed no rule for all times but dealt, rather, with the case at hand. There the defendant-surgeon left a drainage tube in the patient’s body, continued to care for the patient and did not remove the tube till 20 months later. When the tube was removed, everything came to an end—reliance, ignorance, treatment and physician-patient relationship. In the context of the
 
 Huysman
 
 facts, the various descriptive tags (discovery, continuing treatment, continuing physician-patient relationship, end-of-treatment) were roughly equivalent, for all coincided.
 

 They are not synonymous, nevertheless, for they will not produce identical results in all cases. In the present case, the patient apparently
 
 *898
 
 became asymptomatic, then returned to the same doctor when (three and one-half years later) symptoms recurred; reliance and nondiscovery persisted, though the treatment did not. In
 
 Costa
 
 v.
 
 Regents of Univ, of California, supra,
 
 116 Cal.App.2d 445, the plaintiff produced evidence that only after another surgery, 11 months after the defendants ceased treating him, did he discover the negligent cause of his condition. After analyzing
 
 Huysman
 
 v.
 
 Kirsch,
 
 the court held that discovery, not end-of-treatment, marked the commencement of the period of limitations.
 

 Although the
 
 Costa
 
 court did not discuss the reliance factor, it reached an undoubtedly correct result. It would be a rare case in which reliance did not end when discovery occurred.
 
 Reliance
 
 and
 
 discovery
 
 are the descriptive terms which most accurately reproduce the
 
 Huysman
 
 concept. With all deference to the decisions which have used them, the other verbalisms (continuing treatment, end-of-treatment and physician-patient relationship) are relatively untrustworthy. As did the
 
 Costa
 
 court, we reject our present plaintiff’s assertion of an end-of-treatment rule.
 

 For the purpose of repulsing a summary judgment, Fisher is entitled to the assumption that when the first span of treatment ended in March 1969, he had not discovered the negligent injury he now alleges; he had not ceased reliance on Dr. Holland, for he later returned to him for resumed treatment. He was apparently asymptomatic for three and one-half years. He thus presents an extreme but conceptually permissible case for application of the delayed discovery rule of
 
 Huysman
 
 v.
 
 Kirsch.
 
 We shall assume without deciding that the pre-1970 period of limitations on Fisher’s claim was not yet in motion when section 340.5 was adopted.
 

 The Legislature, of course, may restrict the period of limitations on a pending claim so long as the plaintiff is given a reasonable time in which to sue. (2 Witkin, Cal. Procedure (2d Ed. 1970) Actions, § 243, p. 1099-1100.) As we have observed, the new statute codified the one-year-from-discovery-of-injury rule of preexisting law, but established an outer limit of four years; the latter would be suspended if the physician concealed the wrong. Our present plaintiff has invoked delayed discovery, not concealment, as the starting point of the one-year period. Now he would invoke
 
 Huysman
 
 v.
 
 Kirsch
 
 to suspend the four-year period. Although he does so under the end-of-treatment rubric, failure to discover, that is, uninterrupted reliance, form the real foundation for his assertion. He is actually invoking delayed discovery twice, once to toll the one-year statute and again to toll the four-year period.
 

 
 *899
 
 The 1970 statute did not permit this dual application of the delayed discovery concept. As viewed by the state Supreme Court, the statute had a contrary objective. It was designed to modify the “open-ended” operation of the discovery doctrine in order to alleviate malpractice insurers’ need to maintain loss reserves past a four-year period.
 
 (Sanchez
 
 v.
 
 South Hoover Hospital, supra,
 
 18 Cal.3d at pp. 98, 105;
 
 Larcher
 
 v.
 
 Wanless, supra,
 
 18 Cal.3d at p. 657.) As introduced, the 1970 bill proposed an absolute four-year cutoff; this proposal was then tempered by an amendment providing for tolling in the event of concealment by the practitioner.
 
 (Id.,
 
 at p. 98.)
 

 Thus, as the Supreme Court has construed the 1970 statute, nondiscovery delayed the onset of the one-year period and concealment the onset of the four-year period. These elements were not interchangeable. Concealment would not toll the one-year period if discovery had occurred.
 
 (Sanchez
 
 v.
 
 South Hoover Hospital, supra,
 
 18 Cal.3d at pp. 100-101.) By similar logic, the patient’s ignorance would not toll the four-year period; only intentional or negligent concealment would do so.
 
 [9]
 

 The present plaintiff claims unawareness but not concealment. His unawareness of injury suffered in 1967-1969 did not toll the four-year period. If he suffered continuing injury during 1967-1969, the continuum ceased when it ended, more than five years before Dr. Holland’s death.
 

 In the absence of a tenable theory of deferment, Fisher’s claim for malpractice damages ascribed to his 1967-1969 treatment by Dr. Holland was barred by limitations. The trial court had authority to order a partial summary judgment, sustaining the limitations defense as to that portion of Fisher’s claim. (Code Civ. Proc., § 437c, 6th par.; 4 Witkin, Cal. Procedure (2d Ed. 1971) Proceedings Without Trial, § 198, pp. 2843-2844.) The court erred in denying Wells Fargo’s motion for partial summary judgment.
 

 
 *900
 
 Because the bar of limitations excludes that part of Fisher’s malpractice claim which arose between 1967 and 1969, it is unnecessary to pass upon Wells Fargo’s other grounds for eliminating it.
 

 Let a peremptory writ of mandate issue directing the trial court to order a summary judgment in favor of Wells Fargo Bank, as administrator, as to damages predicated upon Dr. Holland’s alleged malpractice in 1967, 1968 and 1969.
 

 Paras, J., and Reynoso, J., concurred.
 

 The petition of the real party in interest for a hearing by the Supreme Court was denied February 2, 1978.
 

 [1]
 

 Section 340.5 was extensively revised by the 1975 Legislature. The 1975 amendments do not govern here.
 

 [2]
 

 On February 19, 1968, Dr. Holland had performed a laminectomy at lumbar vertebrae 4-5 and at lumbar 5-sacral 1. He then gave Fisher outpatient treatment until March 1969. Fisher was next examined by Dr. Holland in September 1972. Procedures during 1972-1973 included a “re-exploratory” laminectomy at lumbar 5 in October 1972 and a “decompressive and re-exploratory” laminectomy at lumbar 4-sacral 1 in September 1973, both performed by Dr. Yarrow, an associate of Dr. Holland in the Neurological Medical Group.
 

 [3]
 

 The following tabulation may impart a moré graphic quality to the time factors: July 1967 Mar. 1969 Sept. 1972 Sept. 17, 1973 Aug. 1974 Sept. 21, 1974 Jan.1975 Mar. 1975 May 1976 20 months of treatment by Dr. Holland. 3 1 /2 years—no treatment. 12 months of treatment by Dr. Holland and Associates. Attorney employed for malpractice suit. Dr. Holland died. Action commenced. Creditor’s claim and amended complaint filed. Plaintiff moves to amend to allege 1967 instead of 1971 as commencement of malpractice.
 

 [4]
 

 In this proceeding only Dr. Holland’s estate asserts the bar of limitations. The other defendants are not before us.
 

 [5]
 

 See, e.g.,
 
 Whitfield
 
 v.
 
 Roth
 
 (1974) 10 Cal.3d 874, 885 [112 Cal.Rptr. 540,519 P.2d 588];
 
 Wozniak
 
 v.
 
 Peninsula Hospital
 
 (1969) 1 Cal.App.3d 716, 722-723 [82 Cal.Rptr. 84];
 
 Moonie
 
 v.
 
 Lynch
 
 (1967) 256 Cal.App.2d 361, 363 [64 Cal.Rptr. 55];
 
 Hundley
 
 v.
 
 St. Francis Hospital
 
 (1958) 161 Cal.App.2d 800, 806 [327 P.2d 131, 80 A.L.R.2d 360];
 
 Costa
 
 v.
 
 Regents of Univ. of California
 
 (1953) 116 Cal.App.2d 445, 454 [254 P.2d 85]. See generally, Louisell & Williams, Medical Malpractice, section 13.07; Comment (1971) Pacific L.J. 663, 665-666, 673-676.
 

 [6]
 

 Trombley
 
 v.
 
 Kolts
 
 (1938) 29 Cal.App.2d 699, 709 [85 P.2d 541];
 
 Petrucci
 
 v.
 
 Heidenreich
 
 (1941) 43 Cal.App.2d 561, 562 [111 P.2d 421],
 

 [7]
 

 E.g.,
 
 Sanchez
 
 v.
 
 South Hoover Hospital, supra,
 
 18 Cal.3d at p. 102;
 
 Stafford
 
 v.
 
 Shultz
 
 (1954) 42 Cal.2d 767,
 
 777
 
 [270 P.2d 1];
 
 Weinstock
 
 v.
 
 Eissler
 
 (1964) 224 Cal.App.2d 212, 227 [36 Cal.Rptr. 537];
 
 Hundley
 
 v.
 
 St. Francis Hospital
 
 (1958) 161 Cal.App.2d 800, 806 [327 P.2d 131, 80 A.L.R.2d 360];
 
 Ehlen
 
 v.
 
 Burrows
 
 (1942) 51 Cal.App.2d 141, 144 [124 P.2d 82];
 
 Petrucci
 
 v.
 
 Heidenreich
 
 (1941) 43 Cal.App.2d 561, 562 [111 P.2d 421].
 

 [8]
 

 See cases cited Louisell & Williams,
 
 op. cit.,
 
 section 13.08, page 374, footnote 50; 2 Pacific L.J.,
 
 op. cit.,
 
 at page 674.
 

 [9]
 

 The Supreme Court’s view is somewhat shrouded by arguendo statements that the 1970 statute was not designed to alter the court-created concept of “injury;” that “injury” had the same meaning in relation to both the one- and the four-year limitations.
 
 (Sanchez
 
 v.
 
 South Hoover Hospital, supra,
 
 18 Cal.3d at p. 99;
 
 Larcher
 
 v.
 
 Wanless, supra,
 
 18 Cal.3d at p. 656, fn. 11, and p. 658, fn. 14.) Pre-1970 decisional law had equated injury with injury-plus-awareness. Nevertheless, the central meaning of the Supreme Court is fairly clear—nondiscovery and concealment were not interchangeable; the former suspended only the one-year limitation, the latter only the four-year limitation of the 1970 statute.