[No. D034549. Fourth Dist., Div. One. Sept. 26, 2000.]

KIRSTEN CLARK, Plaintiff and Appellant, v.
BAXTER HEALTHCARE CORPORATION et al., Defendants and
Respondents.

**COUNSEL**

Rose, Klein & Marias, David A. Rosen, Arlyn M. Latin, Peter H. Crossin and Tamara M. Heathcote for Plaintiff and Appellant.

Crosby, Heafey, Roach & May, James M. Wood, James C. Martin, Marilyn A. Moberg and Lisa M. Baird for Defendants and Respondents Baxter Healthcare Corporation and Baxter International, Inc.

Wilson, Petty, Kosmo & Turner, Regina A. Petty, Frederick W. Kosmo, Jr., Theresa O. Stevenson; Kelley Drye & Warren, John Dames and Stephen A. Wood for Defendant and Respondent Johnson & Johnson Medical.

Seyfarth, Shaw, Fairweather & Geraldson, Robert M. Mitchell and Lawrence E. Butler for Defendant and Respondent Baxter Healthcare Corporation.

Wingert, Grebing, Anello & Brubaker, Alan K. Brubaker; Haight, Brown & Bonesteel, Mario Horwitz; Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross, Barry M. Epstein, Beth S. Rose and Stuart M. Feinblatt for Defendants and Respondents Becton, Dickinson and Company and Maxxim Medical, Inc.

Prindle, Decker & Amaro, Kenneth B. Prindle, Monte H. Machit and Grace C. Mori for Defendant and Respondent General Medical Corporation.

Waters, McClusky & Boehle and Kevin G. McCluskey for Defendant and Respondent Professional Hospital Supply.

Ropers, Majeski, Kohn & Bentley and Robert S. Luft for Defendant and Respondent Kendall Co.

Sarrail, Lynch & Hall, James A. Sarrail, Michael J. Ruggles; Segal McCambridge Singer & Mahoney, Jeffrey Singer and Robert E. O'Malley for Defendant and Respondent Safeskin Corporation.

Jedeikin Meadows & Schneider, Joseph Jedeikin, Curtis Ogilvie, Steven Spaulding; LeClair Ryan and William W. Belt, Jr., for Defendants and Respondents Owens & Minor, Inc., and Stuart Medical, Inc.

## OPINION

**HUFFMAN, J.**—In this products liability action, plaintiff Kirsten Clark appeals a summary judgment in favor of four manufacturer/distributor defendants who produced and supplied latex gloves that she used in the course of her employment as a nurse, and that caused her to experience allergic reactions. The moving defendants were Baxter Healthcare Corporation and Becton, Dickinson and Company, joined by Johnson & Johnson Medical and General Medical Corporation (collectively Defendants). The trial court handling this coordinated litigation heard this motion dealing with the facts relating to Clark, individually, and determined her complaint was

not filed within the one-year limitation period governing claims for personal injury. (Code Civ. Proc., § 340, subd. (3).)[1]

Based on the limitations analyses set forth in *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110-1111 [245 Cal.Rptr. 658, 751 P.2d 923] (*Jolly*) and *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383 [87 Cal.Rptr.2d 453, 981 P.2d 79] (*Norgart*), we determine that triable material issues of fact exist as to whether Clark's complaint was timely filed, based on the nature of the allergic reactions she suffered from exposure to the substance of latex in the form of gloves, and whether this constituted the required facts and circumstances to put her on inquiry notice of a potential manufacturing or design defect (or an actionable failure to warn or negligence), that existed in gloves manufactured from that substance. Accordingly, we reverse the summary judgment entered in favor of Defendants and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Clark graduated from nursing school in 1986 and began working in the health care field at that time. She began working at Scripps Memorial Hospital in 1990 in the intensive care units. She used multiple pairs of powdered latex gloves from that time until approximately October 1993. At the beginning of 1992, she began suffering from intermittent rashes on her hands, and also was having trouble breathing and keeping up with the workload. She told two doctors in April and May 1992 (one a dermatologist) that she had been suffering from an itchy rash on her hands and legs and had sensitive skin, and thought these problems might have been caused by the gloves she used at work.

In the fall of 1993, her hands were cracked and bleeding at work, and she was suffering from itching and sneezing when she used latex gloves. She learned that there were different types of gloves, including nonlatex gloves, available at the workplace and told her supervisor that she thought she was allergic to latex gloves and could not wear them. Her supervisor, Ms. Steckel, provided several types of alternative gloves (vinyl, hypoallergenic latex), which Clark began to use around October 1993. At that time, the intensive care unit was also investigating the possibility that various soaps or lotions were causing rashes on staff persons' hands. On occasion, Clark would run out of vinyl gloves and would return to using latex gloves, which caused her adverse effects (itching, affecting her concentration, making her miserable).

By January 1994, Clark consulted an allergist, who told her not to use latex gloves as she might be allergic to them. It was recommended to Clark

---

[1] All statutory references are to this code unless otherwise stated.

that she have a latex glove skin patch test for allergies, but she declined, because she was already suspicious of the gloves and knew she would have an unpleasant adverse reaction to the test.

In May 1995, Clark was undergoing a gynecological exam by her doctor, who was using latex gloves, when she suffered an anaphylactic attack (acute allergic reaction). At that time, Clark believed that even though she could not wear latex gloves, it would not be harmful to her to let other persons wearing the gloves touch her. After this incident, she joined a support and task force group which studied latex allergies, ELASTIC (East Coast Latex Allergy Support Group and Task Force for Information and Coalition) and received a flier regarding latex allergies litigation. At the end of 1995, she received an article entitled Patients, Health-Care Workers, and Latex Allergy, by Christine D. Personius, a degreed medical technician. In Clark's declaration in her opposition to summary judgment, she attaches this article and claims it was her first notice that anyone had committed any wrongdoing with respect to latex gloves (i.e., improper or defective manufacture).

Clark filed her complaint on January 23, 1996, and amended it April 23, 1996. She alleged four causes of action, all claiming Defendants had manufactured a defective product: fraudulent concealment, strict liability (manufacturing/design defect, or failure to warn), and negligence. In paragraph 27, the operative allegation, Clark alleged that as a result of being continuously exposed to latex gloves with or without added chemical substances that were toxic in nature, she developed "severe illnesses and injuries to the skin, including but not limited to skin discoloration, soreness, rashes, respiratory and/or other related diseases, disorders and reactions caused by extended exposure to the chemical substances contained in Defendants' . . . product." A large number of latex glove manufacturers were named as defendants.

These Defendants answered and moved for summary judgment on the grounds Clark's complaint was barred by the one-year statute of limitations governing personal injury claims. (§§ 340, subd. (3), 437c.) They supplied a separate statement outlining the sequence of events and presented an argument that Clark's action was barred because more than one year before the lawsuit was filed, she was aware of her injuries, attributed those injuries to latex gloves, and suspected or should have suspected that there was something wrong with the gloves. Defendants argued that Clark could not avoid application of the limitations period by arguing she experienced additional allergic symptoms and received additional medical care after her initial allergic experiences.

In opposing Defendants' motion, Clark argued that despite the allergic symptoms that she had experienced prior to May 1995, those symptoms

never put her on notice that anyone had committed any wrongdoing in relation to her use of and exposure to latex gloves. According to her declaration, she continued to believe through 1995 the gloves were safe because they were used in surgical procedures (placed inside patients' bodies), and she did not know until shortly after she joined the support group ELASTIC that her allergies might be the result of anyone's wrongdoing, e.g., attributable to certain problems in the manufacturing process for latex gloves.

After Defendants filed reply papers, the trial court issued a tentative ruling granting the motion and heard oral argument. On August 18, 1999, the trial court granted Defendants' motion for summary judgment. Clark filed a timely notice of appeal.[2]

## DISCUSSION

### I

### *Applicable Standards*

 For a statement of the applicable standard of review, we turn to *Saldana v. Globe-Weis Systems Co.* (1991) 233 Cal.App.3d 1505, 1515 [285 Cal.Rptr. 385]: "In reviewing an order on a summary judgment, the reviewing court employs the same process as the trial court in determining whether, as a matter of law, summary judgment was appropriate." A court identifies the issues framed by the pleadings, determines whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in the moving party's favor, and if the summary judgment motion is meritorious on its face, the court will look to whether the opposition demonstrates there are triable, material factual issues. (*Id.* at pp. 1513-1514.) Section 437c, subdivision (c) allows the trial court ruling on the motion to consider all evidence and all the inferences reasonably deducible from the evidence set forth in the papers, "except summary judgment shall not be granted by the court based on inferences reasonably deducible from the evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact." (§ 437c, subd. (c).)

"While resolution of the statute of limitations issue is normally a question of fact, where the uncontradicted facts established through discovery are

---

[2]The first cause of action in the first amended complaint is for fraudulent concealment. Although Clark argued at the summary judgment hearing at the trial court that a separate limitations period should apply to that claim (3 years, § 338), she has abandoned any such argument on appeal. That is appropriate since this is a personal injury suit, to which the one-year statute clearly applies. (§ 340, subd. (3).)

susceptible of only one legitimate inference, summary judgment is proper. [Citation.]" (*Jolly, supra,* 44 Cal.3d at p. 1112.) ▮ Clark argues on appeal, as she did in unsuccessfully opposing Defendants' motion, that even though she was admittedly aware of her allergy to the natural substance of latex by 1993 or 1994, reasonable minds can differ on whether she had clear and undisputed constructive notice of the basis of her claims of injury due to a potentially defective product made of some version, possibly adulterated or substandard, of that natural substance. She thus argues that triable issues of fact remain regarding notice, such that summary judgment is inappropriate.

▮ "Under the discovery rule, *the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her.* As we said in *Sanchez* and reiterated in *Gutierrez,* the limitations period begins once the plaintiff ' " ' 'has notice or information of circumstances to put a reasonable person on inquiry . . . .' " ' [Citation.] A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery." (*Jolly, supra,* 44 Cal.3d at pp. 1110-1111, fn. omitted, some italics added, some italics omitted.) The Supreme Court explained that in the context of determining a plaintiff's suspicion of "wrong," "wrongdoing," or "wrongful" conduct, those terms are used in their lay understanding. (*Id.* at p. 1110, fn. 7.)

▮ To analyze these issues on appeal, we are required to examine the undisputed facts to determine whether only one legitimate inference may be drawn from them regarding the amount of notice or information of circumstances that would put a reasonable layperson on inquiry about potential wrongdoing that harmed her, such as will begin the running of the limitations period. (*Jolly, supra,* 44 Cal.3d at pp. 1110-1112.)

II

*Limitations: Case Authority and Analysis*

▮ Using the above framework for reviewing a summary judgment, we first note that in identifying the issues framed by the pleadings, the operative allegations of the first amended complaint are sufficiently broad to encompass both types of allergic reactions that Clark is claiming she suffered—the initial, milder form of allergy, and the later, more severe acute reaction that occurred. In her reply brief, Clark represents that it may be appropriate for her to seek amendment of her first amended complaint upon any remand after this appeal is concluded. ▮ An open reversal of a judgment generally leaves the trial court with the discretion to hear and determine

motions to amend the pleadings. (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, §§ 761, 773, pp. 789-790, 801-802.) We express no opinion on the resolution of any such motion to amend.

 In any event, under the facts as pled, we do not find it necessary in this case to adopt the analysis of *Martinez-Ferrer v. Richardson-Merrell, Inc.* (1980) 105 Cal.App.3d 316 [164 Cal.Rptr. 591] (*Martinez-Ferrer*), for the proposition that Clark actually sustained two separate injuries to which two separate limitations periods should apply.[3] Whatever the current validity of the rule stated in *Martinez-Ferrer* (see *DeRose v. Carswell* (1987) 196 Cal.App.3d 1011 [242 Cal.Rptr. 368]; *Miller v. Lakeside Village Condominium Assn.* (1991) 1 Cal.App.4th 1611, 1626, fn. 3 [2 Cal.Rptr.2d 796]), here it is not necessary to decide whether separate injuries occurred at different times. Rather, we should focus more generally on the nature of Clark's notice of the facts giving rise to her potential cause of action.

 Toward this end, we are to determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in the moving party's favor. (*Saldana v. Globe-Weis Systems Co., supra*, 233 Cal.App.3d at pp. 1513-1514.) Then, if a summary judgment motion is found meritorious on its face, the court will look to whether the opposition demonstrates there are triable, material factual issues. (*Ibid.*)

 Generally, "[t]he long-standing rule in California is that a single tort can be the foundation for but one claim for damages. [Citations.] Accordingly, if the statute of limitations bars an action based upon harm immediately caused by defendants' wrongdoing, a separate cause of action based on a subsequent harm arising from that wrongdoing would normally amount to splitting a cause of action." (*Miller v. Lakeside Village Condominium Assn., supra*, 1 Cal.App.4th at p. 1622.) Thus " 'the general rule is that the cause of action is complete on the sustaining of "actual and appreciable harm," on which the recoverable damages would be more than nominal.' [Citation.]" (*Id.* at p. 1623.)

In *Jolly, supra*, 44 Cal.3d 1103 the plaintiff learned in 1972 that while she was in utero, her mother had ingested the synthetic drug estrogen

---

[3] Plaintiff Martinez-Ferrer took medication manufactured by the defendants in 1960, and shortly thereafter, realized his vision was deteriorating and he had developed dermatitis. At the time, although he speculated the conditions were due to the medication manufactured by the defendants, he took no action against the manufacturer. Both conditions eventually disappeared after he stopped using the drug. However, 16 years after he had taken the drug, doctors discovered cataracts in his eyes. He then sued the manufacturer on the theory that the drug he took in 1960 caused the cataracts, but the manufacturer argued the claim should be barred by the statute of limitations. The complaint was held timely, on the basis "that under the peculiar circumstances of this case it would be a miscarriage of justice not to permit plaintiff to go to trial." (*Martinez-Ferrer, supra*, 105 Cal.App.3d at p. 327.)

diethylstilbestrol (DES) for the prevention of miscarriage, and that DES daughters could suffer injuries. She had serious health problems from 1972-1978, and during that period, was aware or suspected that her condition was a result of her mother's ingestion of DES. (*Id.* at p. 1107.) "[A]s early as 1978, she was interested in 'obtaining more information' about DES because she wanted to 'make a claim'; she felt that someone had done something wrong to her concerning DES, that it was a defective drug and that she should be compensated." (*Id.* at p. 1112.) Thus, the record was clear that plaintiff believed years before her 1981 complaint was filed that someone had done something wrong to her. (*Id.* at pp. 1110-1114.) Her complaint was held untimely on that basis.

In so ruling, the Supreme Court clarified that the rule in California is that it is not enough to commence the running of the limitations period when the plaintiff knows of her injury and its factual cause (or physical cause). Rather, the plaintiff must be aware of her injury, its factual cause, and sufficient facts to put her on inquiry notice of a negligent cause. (*Jolly, supra,* 44 Cal.3d at pp. 1109-1114.)

In *Norgart, supra,* 21 Cal.4th 383, the Supreme Court found as a matter of law that the wrongful death plaintiffs in that case knew, more than a year before their complaint was filed, about the potential connection between their daughter's death and her use of a prescription drug manufactured by the defendants.[4] This conclusion stemmed in large part from the concession by plaintiffs that very shortly after their daughter's death, they suspected wrongdoing by someone, although they were not sure who, who was to blame for their daughter's death. They believed some wrongdoing had occurred by someone (either her husband or one of her doctors). Thus, the summary judgment in favor of the drug manufacturer was upheld, and the Supreme Court reiterated that a statute of limitations commences when a plaintiff has reason to suspect a factual basis for a cause of action, and that a plaintiff "has reason to suspect when he has ' " ' "notice or information of

---

[4] In *Norgart, supra,* 21 Cal.4th 383, the plaintiffs were the parents of a married woman who had committed suicide while being treated by a psychiatrist and while taking the prescription hypnotic Halcion. Shortly after their daughter's death the parents discovered that she had received psychiatric treatment and was taking this medication at the time of her death. Over six years after their daughter's death, the parents sued Upjohn, the manufacturers of Halcion, alleging that it had not provided adequate warnings and that regardless of any warnings that could be provided, the drug was unreasonably dangerous at higher dosage levels. This complaint was held untimely due to the plaintiffs' earlier suspicions of wrongdoing by someone, putting them on notice of a potential claim.

circumstances to put a reasonable person on inquiry" ' " ' [citations]." (*Norgart, supra,* 21 Cal.4th at p. 398.)[5]

In *Miller v. Lakeside Village Condominium Assn., supra,* 1 Cal.App.4th 1611, it was not disputed that the plaintiff had actual knowledge of the negligent cause of her 1983 and 1984 injuries at the latest by October 1984, because she suffered appreciable harm (asthma and allergies) which she knew were caused by the mold in the defendants' condominium areas. However, although the plaintiff admitted that her allergies and asthma were constant and chronic from October 1983 through 1987, she claimed her complaint, filed in 1986, was timely, because the injury for which she sought recovery was the separate ailment of immune dysregulation, which she alleges she did not discover until January 1986. She thus argued that a triable issue of fact existed as to whether the plaintiff's January 1986 discovery of her injury (related to a fungal infection) was reasonable.

In reply to the opposition, the defendant landowner in *Miller v. Lakeside Village Condominium Assn., supra,* 1 Cal.App.4th 1611, argued that the plaintiff's exposure to mold-infested premises constituted the invasion of one primary right, which caused her appreciable harm as early as October 1983, such that treating the later diagnosed ailment as the basis for a separate cause of action would impermissibly split her cause of action. The Court of Appeal upheld a defense summary judgment, finding the 1986 complaint to be untimely filed, since Miller became aware upon the occurrence of the 1983-1984 symptoms that it was the defendant's negligence that had caused her "appreciable and actual harm." (*Miller v. Lakeside Village Condominium Assn., supra,* 1 Cal.App.4th at p. 1624.) The Court of Appeal did not apply the delayed discovery rule, even though the plaintiff argued that since she also subsequently suffered from immune dysregulation, that fact should give rise to a separate cause of action. There was no basis for that court to conclude that the accrual date of the cause of action should be delayed until the plaintiff was aware of that injury and its negligent cause, since the plaintiff in that case had discovered all of the essential facts by 1984.

In the case before us, it cannot be said that Clark had discovered all of the essential facts to constitute a products liability cause of action when she

---

[5]In a footnote in *Norgart, supra,* 21 Cal.4th 383, the court disapproved one portion of *Bristol-Myers Squibb Co. v. Superior Court* (1995) 32 Cal.App.4th 959 [38 Cal.Rptr.2d 298], in which this court reinterpreted the *Jolly* test: "To the extent that *Bristol-Myers Squibb* reads *Jolly* to require that a plaintiff must do more than suspect a factual basis for the elements of a cause of action in order to discover the cause of action—at one point it states that the 'formula in *Jolly* is (1) knowledge of [one or more elements], and (2) knowledge of facts creating, or which in a reasonable person would create, a suspicion of [the others]' (*Bristol-Myers Squibb Co. v. Superior Court, supra,* 32 Cal.App.4th at p. 965)—it reads it wrong. [Citation.] To that extent, it is disapproved." (*Norgart, supra,* 21 Cal.4th at p. 410, fn. 8.)

learned of her allergy, since triable issues of fact have been raised regarding her knowledge or awareness that a defendant's wrongdoing may have affected the product, latex gloves, that was giving rise to her allergies. She has alleged that there may have been a negligent cause of her injuries, because the latex gloves supplied may have contained added chemical substances that were toxic in nature, causing her to develop "severe illnesses and injuries to the skin, including but not limited to skin discoloration, soreness, rashes, respiratory and/or other related diseases, disorders and reactions caused by extended exposure to the chemical substances contained in Defendants' product." She could reasonably have inferred from the advice given her by various doctors and from the severity of the May 1995 acute reaction, caused by gloves she was not wearing, that more than a natural allergy to a natural substance was involved, and that a product defect or a contaminated product could have been a causative factor. Thus, the record does not support only one inference as to when this knowledge was available to Clark, and "summary judgment shall not be granted by the court based on inferences reasonably deducible from the evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact." (§ 437c, subd. (c).)

Moreover, the record does not demonstrate any admission of knowledge or suspicion of wrongfulness as a cause of Clark's injuries or as an element of her products liability/negligence causes of action, at the time of the 1993-1994 allergic episodes. Rather, the record shows that at the end of 1995, she received the article entitled "Patients, Health-Care Workers, and Latex Allergy," which she claims was her first notice that anyone had committed wrongdoing with respect to latex gloves (i.e., improper or defective manufacture). This article is in the record and is authenticated by her declaration as to when she received it and its effect upon her. Under *Jolly, supra,* 44 Cal.3d 1103 a plaintiff must be aware of her injury, its factual cause, and sufficient facts to put her on inquiry notice of a negligent cause. (*Id.* at pp. 1109-1114.) Clark's declaration raises triable issues of fact regarding the application of the discovery rule. (See also *Ward v. Westinghouse Canada, Inc.* (9th Cir. 1994) 32 F.3d 1405, 1408 [the factual issue of when a plaintiff is chargeable with taking action to file suit based on the facts he knew is not suitable for disposition on summary judgment.])

Due to a dearth of record evidence of admitted suspicion of wrongdoing, Clark's case is distinguishable from *Norgart, supra,* 21 Cal.4th 383 and *Jolly, supra,* 44 Cal.3d 1103. The discovery rule here allows the statute of limitations to begin to run "when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." (*Jolly* at p. 1110.) Here, there is evidence in the record

to support a reasonable inference that Clark's latex allergies did not perforce lead her to suspect that the latex gloves might have been defectively manufactured in some respect. Although the statute of limitations may be applied to bar an action based upon harm immediately caused by Defendants' wrongdoing, in a case in which no timely filing has been made in relation to the immediate harm, this case does not support such an analysis. (*Miller v. Lakeside Village Condominium Assn.*, *supra*, 1 Cal.App.4th at p. 1622.) Rather, Clark may not be deemed at this point to have been placed on notice, through her allergies, of potential Defendant wrongdoing. The record could support an inference that she did not become aware of a potential wrongfulness component of her cause of action until more information than the existence of her allergies placed her on inquiry notice and then was actually gained. Under the analyses of *Jolly, Norgart* and *Miller*, we conclude that triable material issues of fact remain as to the limitations issue.

In their petition for rehearing, defendants express the fear that our reasoning in this opinion represents a departure from the objective standards established in *Jolly, supra,* at pages 1110-1111 [245 Cal.Rptr. 658, 751 P.2d 923] and *Norgart, supra,* 21 Cal.4th 383 [87 Cal.Rptr.2d 453, 981 P.2d 79] for determining when the limitations period in such a case begins to run. No such departure is intended or achieved in this respect. Rather, our application of limitations law is consistent with the Supreme Court's caveat in *Norgart, supra,* 21 Cal.4th 383 that a plaintiff, under a reasonable person standard, need only suspect a factual basis for the elements of her cause of action in order to discover its existence. (*Id.* at p. 410, fn. 8.) In this case, under these peculiar circumstances, it cannot yet be determined as a matter of law when the limitations period began to run. Further factual development is required.

### DISPOSITION

The summary judgment entered in favor of defendants is reversed. Costs are awarded to plaintiff.

Kremer, P. J., and Nares, J., concurred.

A petition for a rehearing was denied October 20, 2000, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied December 20, 2000.