287 F.Supp.2d 929 (2003)
In re BRIDGESTONE/FIRESTONE, INC., TIRES PRODUCTS LIABILITY LITIGATION.
Gina Santangelo, et al., Plaintiffs,
v.
Bridgestone/Firestone, Inc., et al., Defendants.
MDL No. 1373. Nos. IP-00-9374-C-B/S, IP-01-5369-C-B/S.
United States District Court, S.D. Indiana, Indianapolis Division.
August 27, 2003.
*930 Duane H. Timmons, Reiner, Simpson & Timmons, Redding, CA, C. Tab Turner, Turner & Associates, N. Little Rock, AK, for Plaintiff.
John H. Beisner, O'Melveny & Myers LLP, Washington, DC, Robert J. Gibson, Snell & Wilmer, Irvine, CA, Mark Herrmann, Jones, Day, Reavis & Pogue, Cleveland, OH, Thomas S. Kilbane, Squire, Sanders & Dempsey LLP, Cleveland, OH, Arnold D. Larson, Iverson, Yoakum, Papiano & Hatch, Los Angeles, CA, Mark Merkle, Krieg Devault LLP, Indianapolis, IN, Randall Riggs, Locke Reynolds LLP, Indianapolis, IN, Colin P. Smith, Holland & Knight LLC, Chicago, IL, Thomas G. Stayton, Baker & Daniels, Indianapolis, IN, for Defendants.

ORDER ON MOTION FOR SUMMARY JUDGMENT
BARKER, District Judge.
This matter is before the Court on defendant Bridgestone/Firestone North American Tire, LLC's ("Firestone") motion for summary judgment based on the statute of limitations.[1] For the reasons set forth in the discussion below, the Court GRANTS the motion for summary judgment as to plaintiff Gina Santangelo's claims against Firestone.

I. Facts

The following facts are undisputed: This action arises from a tragic accident that occurred on May 11, 1998, when the 1996 Ford Explorer driven by plaintiff Gina Santangelo's mother overturned on a California highway, following an apparent tread separation. Ms. Santangelo's mother and brother were killed. Ms. Santangelo (who had just turned eighteen) and her half-brother, plaintiff Brandon Bosclair (Brandon) (who was a year and a half old at the time), suffered injuries.
Just a few days after the accident, Ms. Santangelo retained attorneys Jim Gentile *931 and John Crookham to represent her. Santangelo Dep. pp. 16-17, 60-62, 109-117; Crookham Dep. pp. 19-20.[2] Mr. Crookham then obtained the accident report of the California Highway Patrol which, among other things, stated that "[d]ue to an unknown reason the left rear tire on [the vehicle] suffered a tread separation." Slezak Declaration Ex. 3. He also obtained numerous photographs and the subject vehicle's tires. In late June of 1998, Mr. Crookham engaged H.R. Baumgardner, a tire failure analyst, to inspect the subject tires. Crookham Dep. Ex. 12. Mr. Crookham sent the accident report, photographs, and tires to Mr. Baumgardner on July 16, 1998. Crookham Dep. pp. 45-48. Mr. Baumgardner inspected the tires and other materials and reached his conclusions in early August 1998. Slezak Declaration Ex. 21.
At this point, the participants' versions of the facts begin to diverge. Mr. Crookham maintains that Mr. Baumgardner reported to him in late 1998 that the subject tires did not manifest any defect. Crookham Dep. pp. 49-54. Mr. Baumgardner has testified that he orally reported to Mr. Crookham in August 1998 that the subject tire was defective (Baumgardner Dep. pp. 77-78), and that several months later, Mr. Crookham advised him that the file was closed. According to Mr. Baumgardner, after having stored the tires for several months and having heard from Mr. Crookham that he had closed this file, Mr. Baumgardner had the tires destroyed. Id. pp. 71-74; Ex. 90.
In August of 2000, the media widely reported an alleged defect in the Firestone ATX and ATX Wilderness tires. Ms. Santangelo engaged a new attorney, who filed suit against Firestone and Ford Motor Company on her and Brandon's behalf on May 8, 2001, nearly three years after the accident. The new attorneys engaged Mr. Baumgardner as their tire expert, and he has now issued a written report, based on his inspection of the tire in August of 1998, opining that the subject tire was defective.

II. Legal Analysis

Firestone bases its motion for summary judgment on the one-year limitations period prescribed by Cal. Civil Code 340(3), which the parties agree governs Ms. Santangelo's claims.[3] Firestone contends that the one-year limitations period began to run on the date of the accidentthat on that date (or at least shortly thereafter), Ms. Santangelo knew that she had been injured and knew or should have known that tire failure was the cause of the accident. Ms. Santangelo maintains that her claim did not accrue and the limitations period did not begin to run until she discovered her claims against Firestone based on tire defect in August of 2000, when those alleged defects were widely reported by the media. She also argues that Firestone's fraudulent concealment of the defect in its tires tolled the statute of limitations.
Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "A genuine issue of fact exists only when a reasonable jury could find for the *932 party opposing the motion based on the record as a whole." Bellaver v. Quanex Corp., 200 F.3d 485, 492 (7th Cir.2000) (citation omitted). Thus, "the existence of some metaphysical doubt as to the material facts" is not sufficient to defeat summary judgment. Id. The court must "construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party." However, the nonmovant "may not simply rest on his pleadings, but must demonstrate by specific evidence that there is a genuine issue of triable fact." Colip v. Clare, 26 F.3d 712, 714 (7th Cir. 1994) (citation omitted).

A. Application of California's Delayed Discovery Principles
Our task in resolving the summary judgment motion before us is to determine what the California Supreme Court would rule if faced with the same question. Research Systems Corp. v. IPSOS Publicite, 276 F.3d 914, 925 (7th Cir.2002). Because Ms. Santangelo's complaint was indisputably filed more than one year after the accident at issue, that question is whether, under California law, Firestone is entitled to judgment as a matter of law that Ms. Santangelo discovered or reasonably should have discovered her cause of action more than one year before she filed her complaint.
In Mancuso v. Bridgestone/Firestone, 200 F.Supp.2d 983 (S.D.Ind.2002), we set out the principles of delayed discovery accrual announced by the California appellate courts, and we will briefly revisit those principles now. In Norgart v. Upjohn Co., 21 Cal.4th 383, 87 Cal.Rptr.2d 453, 981 P.2d 79 (Cal.1999), the California Supreme Court addressed at length the application of the delayed discovery rule. That court broadly stated the rule as follows: "It postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." Id. at 397, 87 Cal.Rptr.2d 453, 981 P.2d 79 (citations omitted). As this court previously explained in Mancuso,
That standard has been repeatedly articulated by California courts to mean that "the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." Clark v. Baxter Healthcare Corp., 83 Cal.App.4th 1048[, 100 Cal.Rptr.2d 223] (Cal.Ct.App. 2000) (italics in original) (citations omitted). "Wrong," when used by the California courts in this context, does not signify any technical, legal meaning, but rather is applied "in accordance with its `lay understanding.'" Norgart, 21 Cal.4th at 397-98[, 87 Cal.Rptr.2d 453, 981 P.2d 79] (citation omitted).
Several other principles applied by the California appellate courts inform our analysis. First, accrual of a claim is triggered by suspicion; it is not necessary that the plaintiff be aware of the specific facts necessary to establish the claim. Jolly v. Eli Lilly and Company, 44 Cal.3d 1103, 1111[, 245 Cal.Rptr. 658, 751 P.2d 923] (Cal.1988). Second, a plaintiff has reason to be suspicious when he has "notice or information of circumstances to put a reasonable person on inquiry." Norgart, 21 Cal.4th at 398[, 87 Cal.Rptr.2d 453, 981 P.2d 79]. Third, a plaintiff must seek to learn the facts necessary to bring the claimhe cannot sit back and wait for the facts to "find him." Id. (citation omitted). Fourth, the plaintiff's failure or inability to discover the identity of the wrongdoer does not postpone the accrual of the cause of action. Id. at 399[, 87 Cal.Rptr.2d 453, 981 P.2d 79]. Fifth, a plaintiff who seeks to rely on discovery principles to avoid the statute of limitations bar bears the burden of establishing *933 the facts underlying her inability to discover the claim. McKelvey v. Boeing North American, 74 Cal.App.4th 151, 160[, 86 Cal.Rptr.2d 645] (Cal.Ct.App. 1999).
200 F.Supp.2d at 987-88.
Finally, as we noted in Mancuso, resolution of the delayed discovery inquiry is normally a question of fact. Id. at 988 (citing Jolly v. Eli Lilly and Company, 44 Cal.3d 1103, 1112, 245 Cal.Rptr. 658, 751 P.2d 923 (Cal.1988)). Unless the uncontradicted facts are susceptible of only one legitimate inferencethat the plaintiff discovered or should have discovered her claim more than a year before filing suitthen summary judgment must be denied. Id.
Firestone argues that Ms. Santangelo's claim accrued on the date of the accident because on this day she was aware that the tire on the Explorer had "blown" and therefore knew the instrumentality of her injuries. Alternatively, Firestone maintains that her engagement of an attorney and, through that attorney, the engagement of a tire failure expert, supplies undisputed proof of Ms. Santangelo's suspicion that "the wrongdoing of another" caused her injuries. At the latest, Firestone argues, Ms. Santangelo was on notice of her claim in August of 1998, when, as Ms. Santangelo now contends, Mr. Baumgardner concluded that the subject tire was defective.
Firestone's first argument does not square with California law. Knowledge of the instrumentality or product that caused the injury does not trigger accrual of the limitations period unless the injury alleged was so commonly associated with a defective product that a reasonable person would suspect wrongdoing by the manufacturer. Tucker v. Baxter Healthcare Corp., 158 F.3d 1046, 1049 (9th Cir.1998) (quoting Jolly, 44 Cal.3d at 1109, 245 Cal.Rptr. 658, 751 P.2d 923). And as we noted in Mancuso, Firestone has repeatedly emphasized that tire failure can occur for many reasons unrelated to product defect. 200 F.Supp.2d at 990 n. 11. In this case, therefore, the pertinent inquiry under California law is not when Ms. Santangelo knew what product caused her injuries, but rather when she suspected or reasonably should have suspected that her injuries were caused by wrongdoingin this case, a defect in a product. See, e.g., Ward v. Westinghouse Canada, 32 F.3d 1405, 1407-08 (9th Cir.1994); Clark v. Baxter Healthcare Corp., 83 Cal.App.4th 1048, 1058-59, 100 Cal.Rptr.2d 223 (Cal.Ct.App. 2000). We reject Firestone's argument on this point for the same reasons we rejected it in Mancuso.
Under California law, the question for summary judgment purposes is whether the record evidence permits only one legitimate inference: that Ms. Santangelo suspected or reasonably should have suspected, more than one year before she filed her claim, that her injuries were caused by another's wrongdoing. Ms. Santangelo urges us to find that our holding in Mancuso is dispositive of the issue presented here. She maintains that, like the plaintiffs addressed in that decision, she did not have reason to suspect tire defect until the media widely reported an alleged defect in August of 2000. The circumstances following the accident here, however, are markedly different from those at issue in Mancuso.
It is undisputed that Ms. Santangelo hired counsel to investigate and pursue her claims within a week of the accident. That act, in itself, has been noted by California courts as the basis for a determination that the plaintiff had the requisite suspicion to trigger the applicable limitations period. See Sunde v. Flack, 2002 WL 31235481 at *3, *5 (Cal.Ct.App. October 4, 2002) (point at which plaintiff "considered retaining an *934 attorney" signaled suspicion sufficient to trigger limitations period); Wells Fargo Bank v. Fisher, 74 Cal.App.3d 890, 896, 141 Cal.Rptr. 836 (1977) (court indicated that employment of counsel to pursue claims constituted discovery for accrual purposes).
Ms. Santangelo's hiring of an attorney is not the only undisputed fact indicative of suspicion. Her attorney, Mr. Crookham, was obviously suspicious enough of defect to obtain the tires and numerous photographs and to engage a tire failure expert, Mr. Baumgardner, to examine the tire. The knowledge or suspicion of her attorney is imputed to Ms. Santangelo.[4] That expert determined in August of 1998, according to Ms. Santangelo's contentions, that the tire was defective. Plaintiffs' Statement of Add'l Facts ¶ 31.
The plaintiffs argue that "[t]he mere fact that GINA's attorney investigated the possibility that the tires might be defective does not establish as a matter of law that she had the requisite knowledge at that time to commence the running of the statute of limitations", citing Evenson v. Osmose Wood Preserving Co., 899 F.2d 701 (7th Cir.1990). Evenson addresses a different issue. In that case, the plaintiff inquired of several doctors whether his injury had been caused by exposure to a particular chemical; the doctors denied any connection. Applying Indiana's discovery rule, which was triggered by the plaintiff's discovery of the instrumentality of her injury, the court held that the plaintiff's questioning of his doctors was not irrefutable evidence that he knew or should have known that the chemical was the instrumentality of his injury. As we have explained above, the pertinent inquiry in this case is not discovery of the instrumentality of Ms. Santangelo's injury. Moreover, in Evenson, every professional with whom the plaintiff had consulted had rejected any basis for suspicion; here, the undisputed facts (Ms. Santangelo's retention of an attorney, the attorney's retention of a tire failure expert, and, according to Ms. Santangelo, the expert's determination of defect) evidence suspicion.
The plaintiffs also make much of the dispute in the record regarding what happened after Mr. Baumgardner examined the tires. Mr. Crookham has maintained that Mr. Baumgardner reported in late 1998 that he had found no defect in the tires. Crookham Dep. pp. 49-54. Mr. Baumgardner says he determined that the subject tire was defective and reported that determination to Mr. Crookham in August of 1998. Baumgardner Dep. pp. 77-78.
These facts, though disputed, are not material. First, regardless of what actually happened after Mr. Baumgardner examined the tire, the undisputed facts are that Ms. Santangelo hired an attorney to pursue her claims and her attorney engaged an expert to examine the tires for defect. These undisputed facts demonstrate the suspicion that caused the commencement of the limitations period.
Second, either factual scenario suggested by the plaintiff is fatal to her claim. If the jury believed Mr. Baumgardner's version of the facts, then Mr. Crookham (and, by imputation, Ms. Santangelo) had notice that establishes more than a suspicion of defect; it shows they had actual evidence of defect in 1998. If, on the other hand, the jury believed Mr. Crookham's version of the facts (that Mr. Baumgardner found no defect when he examined the tire in 1998), then Mr. Baumgardner's current expert report, central to the plaintiffs' claim of liability, is completely eviscerated.
*935 Attempting to escape this Catch-22, the plaintiff suggests that perhaps the jury could believe both versions and determine that the conflict between them is the result of miscommunication between Mr. Crookham and Mr. Baumgardner. This argument must fail because, first, the plaintiff has offered no proof of any such miscommunication. Both are unequivocal in their testimony on this point. Second, the consequences of the failure of Ms. Santangelo's retained professionals to communicate effectively with one another (or with her, for that matter) cannot be laid at the feet of Firestone for accrual purposes. Likewise, if such failures did occur and have damaged Ms. Santangelo, her remedy is not to be obtained from Firestone. Third, as noted above, even if a miscommunication occurred, it was after the limitations period had begun to run.
In her surreply, Ms. Santangelo has attempted to re-frame the summary judgment issue as "whether the Santangelo family had sufficient information to place a `reasonable person' on notice that their injuries were caused by a `defect' in the tires." She now maintains that the knowledge or suspicions of her lawyer and expert cannot be imputed to her because: (1) Mr. Crookham was not her agent but an independent contractor, and (2) Mr. Crookham's conduct was so inimical to her interests that the attorney/client relationship "may have [been] obliterated." As we noted above, the former contention wholly lacks a factual or legal basis.[5]
The latter argumentthat Mr. Crookham's possible misconduct could prevent the imputation of his knowledge to Ms. Santangelomust also fail. First, no evidence sustains it. Rather, new counsel simply suggest that
[f]or a solo practitioner to pioneer this field of potential defective products against one of the Big Three and its tire vendor would have undoubtedly seemed daunting. Hence, the jury could find that Mr. Crookham simply, though deliberately, decided not to inform his client about the defect identified by the expert. GINA, after all, had already received a settlement from her mother's insurance carrier.
In determining this summary judgment motion, we must credit Ms. Santangelo with all inferences that can be reasonably drawn from the evidence. The inference counsel asks us to permit here, however, is grounded neither in evidence nor reason. These failings are reflected in counsel's hedging on this point: Ms. Santangelo and her counsel argue that the "jury could find" a fact that they are not themselves willing at this stage to assert and to support with evidence. The facts on which they relythat Ms. Santangelo had already received a settlement from her mother's insurance carrier, that Ford and Firestone were formidable opponents, and that Mr. Crookham was a solo practitionerhardly justify in themselves an inference of intentional misconduct; a similar combination of facts is likely present in hundreds of the cases in this MDL. Moreover, this "suggestion" would require the factfinder to believe that Mr. Crookham was willing to take Ms. Santangelo's case before he had expert evidence of tire defect but was suddenly too daunted to pursue it after he had acquired such evidence, and that so daunted, he purposefully allowed the limitations period to expire without referring the case to, or engaging as co-counsel, another lawyer. Absent evidence of intentional misconduct, we cannot permit the inference counsel suggest.[6]

*936 B. Consideration of the Fraudulent Concealment Doctrine
Finally, we address Ms. Santangelo's contention that Firestone's alleged fraudulent concealment of a tire problem tolls the applicable limitations period. As we have determined above, Ms. Santangelo was on notice of her claim because she suspected or reasonably should have suspected that her injury was caused by the wrongdoing of another. The doctrine of fraudulent concealment, as articulated by the California appellate courts, therefore does not apply. See Rita M. v. Roman Catholic Archbishop of Los Angeles, 187 Cal.App.3d 1453, 1460-61, 232 Cal.Rptr. 685 (Cal.Ct.App.1986) (doctrine of fraudulent concealment is not applicable, regardless of the defendant's efforts to conceal its alleged wrongs, when the plaintiff is on notice of her potential claim).
Moreover, the doctrine of fraudulent concealment does not apply absent the plaintiff's reliance; that is, it applies only if, because of the fraud, the plaintiff fails to discover some fact critical to her claim. Goldrich v. Natural Y Surgical Specialties, 25 Cal.App.4th 772, 782-84, 31 Cal. Rptr.2d 162 (Cal.Ct.App.1994). Here, nothing that Firestone did kept Ms. Santangelo from engaging an attorney, obtaining the tires, and hiring a tire failure expert who, according to Ms. Santangelo's own factual assertions in this case, did find an alleged defect in the subject tire in 1998almost three years before she filed her complaint. The fraudulent concealment doctrine has no application to this case.

III. Conclusion

For all of the above reasons, we find that there is no genuine issue of material fact and that Firestone is entitled to judgment as a matter of law based on its statute of limitations defense.
NOTES
[1] Firestone has also filed a motion for summary judgment on spoliation grounds. In light of the disposition of the current motion, that motion is now moot with respect to Gina Santangelo's claims. The Court will address the spoliation arguments with respect to the claims of plaintiff Brandon Bosclair at a later date.
[2] All references to the Crookham Deposition are to the June 27, 2002 deposition.
[3] Firestone does not move for summary judgment on statute of limitations grounds as to the claims of Brandon, who was a minor at the time of the accident and at the time suit was filed on his behalf.
[4] Ms. Santangelo has attempted to construct an argument that Mr. Crookham's knowledge should not be imputed to her because he was an "independent contractor." None of the cases cited by the plaintiff nor any facts in the record support this assertion.
[5] See supra note 4.
[6] We do not intend our discussion of this point to be dispositive of the issue as it could arise in other contexts and with different factual development.