Filed 6/30/15  Gould v. Cal. Dept. of Corrections and Rehabilitation CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| TIMOTHY GOULD et al., | D067425 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. CIVRS1009426) |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of San Bernardino County, Barr L. Plotkin, Judge.  (Retired judge of the San Diego Sup. Ct.)  Affirmed.

Law Offices of Sandra L. Noël and Sandra L. Noël for Plaintiffs and Appellants.

Kamala D. Harris, Attorney General, Alicia M. B. Fowler, Assistant Attorney General, Christine B. Mersten and Alice Q. Robertson, Deputy Attorneys General, for Defendant and Respondent.

Appellants Timothy Gould, Alex Mihalkovitz, Dema Osborn, Annette Miles, Deborah Castaneda, Ercell Sellers, Eric Newton, Frank Hernandez, Kip Brown, Marco Leon and Oliver Aleta (collectively appellants or plaintiffs) appeal a judgment entered after the trial court granted summary judgment in favor of their employer, the California Department of Corrections and Rehabilition (the Department), on their age discrimination claim. Appellants contend the court erred in summarily adjudicating their claim because triable issues of material fact exist as to whether they established pretext. Appellants also assert the trial court erred by not addressing the Department's argument that they failed to exhaust their administrative remedies. As we shall explain, the trial court correctly found that appellants failed to establish pretext. This conclusion renders moot the argument that appellants failed to exhaust their administrative remedies.

FACTUAL AND PROCEDURAL BACKGROUND

Appellants, who were all over the age of 40, worked at the Department's southern transportation hub in Chino, California. The southern hub is one of three within the State—the other two being the central and northern hubs. Transportation officers are responsible for transporting prison inmates between state institutions and to out-of-state locations. Because of the unique nature of their workload, transportation officers began accruing overtime only after they worked 164 hours per 28-day work period. Each officer was required to go on one intrastate run and was permitted to volunteer to "fill-in" on other runs no more than two other times, for a possible total of three intrastate runs per work period. Fill-in assignments led to

2

overtime pay when employees volunteered for and worked these assignments after they had already worked 164 hours in a pay period.

From about 2001 until 2007, the southern hub based its fill-in assignments off seniority. The seniority of an employee is not correlated to his or her age. The seniority ranking of an employee within a group of employees is entirely dependent on their number of years of service and varies relative to the years of service of the other members in the group. In November 2005, Jeffrey Macomber became chief of the Department's transportation unit. Macomber changed the intrastate bus workload distribution at the southern hub from a system which favored seniority to a system that distributed the workload equally among all employees. In 2007, Lieutenant Rodrick DeYoung, the person responsible for assigning staff to the southern hub's bus runs, implemented the policy change. In December 2009, appellants filed discrimination charges. In August 2010, 14 plaintiffs filed this action against the Department alleging a number of causes of action. A motion for judgment on the pleadings and dismissals by some of the plaintiffs subsequently narrowed the scope of the action.

The Department moved for summary judgment on the remaining 11 plaintiffs' sole cause of action for age discrimination, arguing it had nondiscriminatory reasons for its actions and plaintiffs failed to exhaust their administrative remedies. The trial court issued a tentative ruling denying the motion. After obtaining supplemental briefing, the trial court ultimately granted the motion. The trial court entered judgment in favor of the Department and appellants timely appealed.

3

DISCUSSION

I. *Procedural Issues*

A. Background Facts

The trial court issued a tentative ruling denying the Department's motion. After discussing the matter with counsel, the trial court continued the motion and allowed the parties to submit supplemental briefing. It also allowed the Department to pare down its 137 evidentiary objections and re-file its most critical objections.

The Department filed supplemental points and authorities and a supplemental separate statement. It also provided the Court with an edited list of evidentiary objections (the supplemental subset of objections) that eliminated many of its prior objections. Appellants filed a responsive brief, noting that the Department's submissions exceeded the proposed scope of briefing by citing additional authority.

At a second hearing on the motion, the trial court informed the parties it would not consider the Department's amended separate statement, reply to plaintiffs' separate statement and supplemental subset of objections to plaintiffs' evidence. The court noted that the reorganization of the evidence allowed it to analyze the evidence and find defects in its earlier analysis. After discussing the matter with counsel, the trial court granted the motion finding no triable issue of fact regarding pretext. The court declined to rule on whether plaintiffs had exhausted their administrative remedies, stating the process would be too laborious given the number of plaintiffs. The trial court stated it had a duty to rule on the evidentiary objections and indicated it would have a ruling on the objections in ten days. The trial court later issued a minute order

4

that ruled on plaintiffs' objections and sustained some of the objections set forth in the Department's supplemental subset of objections.

B.  Analysis

Appellants contend the trial court erred when it ruled on the Department's supplemental subset of objections and sustained objection numbers 1, 32, 38, 39, and 41.  Appellants note that by ruling on the objections, the court contradicted its earlier statement during argument that it would not consider the Department's supplemental subset of objections.

The Supreme Court "recognize[d] that it has become common practice for litigants to flood the trial courts with inconsequential written evidentiary objections, without focusing on those that are critical."  (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 532 (*Reid*).)  Citing *Reid* at the first hearing on the motion, the trial court invited the Department to narrow the scope of its objections and resubmit them.  At the second hearing, the trial court stated it would not consider the Department's resubmitted objections.  The trial court reversed course and later provided a ruling on the Department's resubmitted objections, possibly remembering it had invited the Department to narrow and resubmit the objections.

We reviewed the Department's original objections and its resubmitted supplemental subset of objections.  The resubmitted objections renumbered and restated some of the Department's original objections.  Had the trial court not ruled on any of the objections, "it is presumed that the objections have been overruled, the trial court considered the evidence in ruling . . . , and the objections are preserved on

5

appeal." (*Reid*, *supra*, 50 Cal.4th at pp. 531-532.)  The trial court's ruling left the parties in no worse a position than they would have been in if the court had failed to issue a ruling on any of the objections.  Simply put, the objections are preserved on appeal and the parties may challenge the trial court's consideration of specific items of objected-to evidence on appeal.  As relevant to our discussion, we address the trial court's evidentiary rulings below.

## II.  *Summary Judgment Motion*

A.  General Legal Principles

Employers are prohibited from discriminating against a person on the basis of age in compensation, terms, conditions or privileges of employment.  (Gov. Code, § 12940, subd. (a).)  Discriminatory intent is a necessary element of a discrimination claim.  (*Jones v. Department of Corrections & Rehabilitation* (2007) 152 Cal.App.4th 1367, 1369.)  "[A] plaintiff has the initial burden to make a prima facie case of discrimination by showing that it is more likely than not that the employer has taken an adverse employment action based on a prohibited criterion.  A prima facie case establishes a presumption of discrimination.  The employer may rebut the presumption by producing evidence that its action was taken for a legitimate, nondiscriminatory reason.  If the employer discharges this burden, the presumption of discrimination disappears.  The plaintiff must then show that the employer's proffered nondiscriminatory reason was actually a pretext for discrimination, and the plaintiff may offer any other evidence of discriminatory motive.  The ultimate burden of

6

persuasion on the issue of discrimination remains with the plaintiff." (*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 214-215 (*Harris*).)

We independently review an order granting summary judgment or adjudication, viewing the evidence in the light most favorable to the nonmoving party. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.) We first identify the issues framed by the pleadings because it is those issues the papers must address. (*Clark v. Baxter Healthcare Corp.* (2000) 83 Cal.App.4th 1048, 1054.) Second, we determine if the moving party's evidence demonstrates the opponent cannot establish its claim and justifies a judgment in the moving party's favor. (*Ibid.*) Lastly, we determine whether the opposing party's evidence demonstrates a triable issue of material fact. (*Ibid.*) In determining whether there are triable issues of fact, we consider all the evidence set forth by the parties, except that to which objections have been made and properly sustained. (Code Civ. Proc., § 437c, subd. (c); *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*).) In performing our review, we are not bound by the trial court's stated rationale, but independently determine whether the record supports the trial court's conclusion that the plaintiff's claims failed as a matter of law. (*Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 951.)

B. Age Discrimination

Appellants alleged that the Department's 2007 policy change eliminating the seniority-based rotation discriminated against them based on their age because most of the senior staff are over age 40. In moving for summary judgment, the Department did not challenge that appellants had established a prima facie case of age discrimination.

Accordingly, a presumption of discrimination existed and the Department sought to rebut the presumption by producing evidence that its action was taken for a legitimate, nondiscriminatory reason. (*Harris*, *supra*, 56 Cal.4th at p. 214.) The Department presented admissible evidence rebutting the presumption of discrimination.

Namely, in 2005, when Macomber became chief of the Department's transportation unit, one of his first priorities was to standardize the procedures of the transportation unit statewide to streamline operations and increase efficiency. In 2006, he began the process of overhauling the transportation unit's intrastate bus run workload distribution for all three hubs to create a consistent, standardized system across all three hubs. Macomber sought input from the captains of the three hubs, including Joe Belmontez, the captain of the southern hub. During this process, Macomber learned that the central and northern hubs used scheduling methods that allowed for equitable distribution of the fill-in workload among the employees. Macomber made the decision that the intrastate workload assigned to all three hubs should be evenly and impartially distributed among the staff using an impartial alphabetical roster system like the one in place in the central hub.

In 2007, Macomber introduced the new policy across the entire transportation unit. The policy required all employees go on at least one intrastate bus run per work period and stated that the regular workload and fill-ins would be scheduled according to an alphabetical roster rather than on a seniority system. This changed the system in the southern hub from one that favored seniority to a seniority neutral system.

8

Macomber drafted a memorandum for distribution to all three hubs describing the policy and specifying how it was to be administered.

Appellants do not challenge the trial court's conclusion that the Department satisfied its burden of demonstrating a nondiscrimatory reason for its policy change. Based on the Department's showing of a nondiscrimatory reason for its policy change, the presumption of discrimination disappeared and the burden shifted to appellants to show the Department's explanation for the policy change was pretextual. (*Harris*, *supra*, 56 Cal.4th at pp. 214-215.) On this element, appellants claim the trial court erred when it found they had failed to show the existence of a triable issue of fact regarding pretext. Appellants relied on the following to show the Department's proffered nondiscriminatory reason for the policy change was actually a pretext for age discrimination: (1) Belmontez's derogatory statements; (2) evidence showing Belmontez and DeYoung influenced Macomber's decision; (3) the Department's shifting reasons for the policy change; and (4) nonstatewide implementation of the policy. As we shall explain, appellants have failed to meet their burden of showing a triable issue of material fact on pretext.

The Department presented evidence showing the chain of command in the transportation unit. The southern hub has about 50 officers that are supervised by 10 sergeants. The sergeants are supervised by a lieutenant. DeYoung is the lieutenant for the southern hub. The lieutenant is supervised by the captain of the southern hub. From about May 2006 to April 2009, Belmontez was the captain of the southern hub.

9

The captain reports directly to the chief of the southern hub, currently John Oliva. Macomber was the chief of the entire transportation unit for the Department.

Appellants presented evidence that Belmontez referred to senior staff as dinosaurs, O.G.s (Old Guys) and cancer. Belmontez, however, denied having any discriminatory intent and generally explained that the terms he used were not intended to be derogatory. Appellants argue these statements show discriminatory animus to employees based on their age. Appellants also presented evidence showing DeYoung may have harbored a discriminatory animus by advising sergeants to stop giving senior officers above standard evaluations. In turn, appellants contend Belmontez and DeYoung influenced Macomber's decision to change the policy under a "cat's paw" theory.

Under a cat's paw theory, an innocent decision maker (Macomber) could be a cat's paw doing the bidding of others (Belmontez and DeYoung) who possess a discriminatory animus. (See *Reeves v. Safeway Stores, Inc.* (2004) 121 Cal.App.4th 95, 114-115, fn. 14.) Appellants' contention that Belmontez or DeYoung influenced Macomber's decision to change the policy is pure conjecture that is not supported by the evidence.

While the evidence is sufficient to create a triable issue of fact as to whether Belmontez and DeYoung harbored a discriminatory animus, there is no evidence showing these individuals influenced Macomber's decision to eliminate the seniority-based policy. Rather, the evidence shows that when Macomber asked Belmontez for feedback regarding the southern hub's seniority-based system, Belmontez informed

10

Macomber that the seniority-based system worked well in the southern hub. Belmontez stated that during the evaluation and input process, he supported use of the seniority-based system and recommended it to Macomber because it was impartial and easy to understand.

Appellants next argue that numerous contradictory explanations for the policy change provided by management give rise to an inference that the change in policy was a pretext for age discrimination. We disagree.

Macomber explained that he changed the work distribution system to standardize procedures and increase efficiency. He noted complaints that the seniority-based system was difficult to monitor, concentrated the workload within a small group of senior employees and had few controls in place to detect or correct inefficient or inequitable practices. He also saw a need to provide greater training opportunities to less senior employees because under the seniority-based system, low seniority employees had the least contact with the most experienced employees. Appellants, however, presented no evidence that Macomber's reasons for altering the policy ever changed. Rather, appellants presented evidence regarding what they were told by others regarding the policy change. For example, Gould stated employees were originally told the reason for the change was to make overtime more fair for all officers. While appellants presented evidence showing they were provided differing reasons for the policy change, they presented no evidence tracing any differing reasons to Macomber.

Appellants point to the face of Macomber's written policy which stated the "purpose and objectives of this procedure [was] to provide a standardized method . . . intended to provide fair and equitable distribution of assignments to staff." They complain no reason existed for changing the policy because the original seniority-based rotation policy was fair and equitable. However, where, as here, an employer puts forth reasons for its employment decision that are "*facially unrelated to prohibited bias*," its "proffered reasons, if 'nondiscriminatory on their face' and 'honestly believed' by [the] employer, will suffice even if 'foolish or trivial or baseless'. . . ." (*Guz, supra*, 24 Cal.4th at p. 358.)

Finally, appellants complain the Department never implemented the new policy statewide in 2007 and this shows that the Department's reason for changing the policy was merely a pretext to discriminate against older employees. Appellants, however, presented no admissible evidence supporting their assertion that when the Department rolled out the new policy in 2007, it failed to implement it statewide.

To support their contention that the Department failed to implement the new policy statewide, appellants cited to the deposition testimonies of Sergeants Wayne Bennett and Arthur Valdez, showing these officers had spoken to unknown individuals from the northern and central hubs at some unknown time and learned that these hubs did not change to an alphabetic roster with Valdez stating that these hubs still used a seniority system. The Department originally objected to these statements as hearsay, lacking in personal knowledge, irrelevant and as improper opinion evidence. In its resubmitted objections, the Department eliminated its improper opinion evidence

12

objection, but otherwise objected to these portions of Bennett's and Valdez's deposition testimony on the same grounds. The trial court sustained the objections.

Appellants assert the trial court erred in sustaining the objections because they offered the statements by Bennett and Valdez as impeachment evidence and to show the state of mind of the listeners, Bennett and Valdez. We disagree.

"'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a).) "Under the Evidence Code, no hearsay problem is involved if the declarant's statements are not being used to prove the truth of their contents but are being used as circumstantial evidence of the declarant's mental state." (Assem. Com. on Judiciary com., 29B pt. 4 West's Ann. Evid. Code (1995 ed.) foll. § 1250, p. 281.) Here, the state of mind of Bennett and Valdez (i.e., whether Bennett or Valdez believed Belmontez's stated reasons for the policy change in the southern hub) is irrelevant. The Department's uncontroverted evidence shows Macomber, not Belmontez, made the decision to change the policy in the southern hub. Because Bennett's and Valdez's statements constituted inadmissible hearsay, the trial court did not err when it sustained the Department's objection.

Appellants assert the hearsay statements of Bennett and Valdez were admissible to impeach statements made by Macomber, Belmontez and DeYoung regarding the policy change being implemented in all hubs. Evidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with that witnesses' testimony. (Evid. Code, § 1235.) Appellants cited no authority

13

that a declarant's hearsay statements become admissible if they impeach the testimony of other witnesses, and we are unaware of any such authority. Even assuming the admissibility of Bennett's and Valdez's hearsay statements that the new policy was not implemented at all hubs, that the new policy may not have been implemented as intended, standing alone, does not show Macomber created the policy to discriminate against older employees.

Finally, appellants cited to the declaration of Adolfo Rivas, a correctional officer who has worked at the central hub since 2001. Rivas stated that after Belmontez transferred to the central hub in 2009, the central hub policy changed so that overtime was earned based on hours worked and Belmontez made it difficult for senior staff to earn overtime. Rivas also stated he felt Belmontez ostracized him and other senior officers and "just tolerate[ed] the senior staff."

Appellants assert that based on Rivas's declaration, a reasonable juror could conclude the reasons stated by the Department for changing the policy in 2007 were not legitimate and were a pretext for discrimination. The Department objected to Rivas's statements as lacking personal knowledge and improper opinion testimony. The trial court, however, overruled these objections.

Assuming, without deciding, Rivas's statements were admissible, they fail to create a triable issue of fact showing the Department implemented the policy change in 2007 as a pretext to discriminate based on age. While Rivas's statements exhibit possible discriminatory age-based animus by Belmontez, there is no evidence showing Belmontez influenced Macomber's decision to change the policy in 2007.

14

Additionally, while Rivas complained about Belmontez's 2009 policy change at the central hub connecting overtime to hours worked, this change is not at issue in this action.

In summary, the statements cited by appellants were not substantial enough to create a triable issue of fact of pretext for age discrimination.

DISPOSITION

The judgment is affirmed.  Respondent is entitled to its costs on appeal.


McINTYRE, Acting P. J.

WE CONCUR:

O'ROURKE, J.

IRION, J.

15